**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Keith DEVINE, Appellant.**

Superior Court of Pennsylvania.

Submitted May 31, 2011.

Filed Aug. 5, 2011.

Lee Mandell, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: GANTMAN, LAZARUS, and FREEDBERG, JJ.

OPINION BY GANTMAN, J.:

Appellant, Keith Devine, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his bench trial convictions for third degree murder, criminal conspiracy, and two counts of aggravated assault.[1] We affirm.

The trial court sets forth the relevant facts of this appeal as follows:

On Sunday, March 25, 2007, at about 4:37 p.m., police responded to a shooting at 5821 Pentridge Street and found four victims suffering from gunshot wounds. One victim, Jovonne Stelly, was later pronounced dead from a gunshot wound to the face.

The day of the shootings, at about 3:30 p.m., [Appellant] was standing outside his home at 5817 Pentridge St., at a house he shared with his step-father, co-defendant Sam Scruggs when a group of approximately 20 young men and wom[e]n, including a man named Eddie Tate, approached [Appellant] from the street regarding a previous problem. [Appellant] went into the house and the mob outside moved to the far end of the block rather than return home. Shortly thereafter, a car pulled up to [Appellant's] house and an unidentified man got out and distributed guns to individuals inside the house, including Scruggs, [Appellant] and another man named Michael Wynn.

Now armed, [Appellant] and company went back outside to confront the earlier mob. Arguments flared, someone spit

---

1. 18 Pa.C.S.A. §§ 2502(c); 903(a)(1); 2702(a), respectively.

on someone else, and Scruggs pulled out his gun and knocked a member of the mob, [Earl] Zarpele, to the ground. Eddie Tate went behind Scruggs at which time, according to testimony, [Appellant] began shooting. Gun fire ensued on both sides, including gun fire from further up the block where two additional co-defendants, Michael Stelly and Rashiek High, were located. The decedent, Jovonne Stelly, was the [sister] of Mr. Stelly and the wife of Mr. High. She was in the middle of the street, attempting to remove her sister from the crossfire when she was struck by a bullet.

A post-mortem examination of Jovonne Stelly was performed on March 26, 2007, where it was determined that the cause of death was a gunshot wound to the head/neck; the manner of death was homicide. Three other victims sustained gunshot injuries: Scruggs was shot in the chest, a Kendall Sterns was shot in the arm and a Kalif Lee was shot in the leg. While there were numerous gunshot injuries, Ms. Stelly was the only fatality.

After the incident, [Appellant] fled Philadelphia. For months police attempted to locate him and he was finally apprehended in Williamsport, Pa. Upon being approached by an officer, [Appellant] resisted arrest and moved his hand toward his waistband. The officer and [Appellant] then engaged in a struggle over a gun [Appellant] was carrying that culminated in [Appellant's] arrest.

(Trial Court Opinion, filed August 18, 2010, at 2–3). The trial court further states the relevant procedure of this case as follows:

[Appellant] was arrested and charged with murder, generally, criminal conspiracy, and aggravated assault. . . .

[Appellant] was tried jointly with four additional defendants by this [c]ourt, sitting without a jury, in April 2009. At the conclusion of trial, [Appellant] was found guilty of Murder in the Third Degree, Criminal Conspiracy, and two counts of Aggravated Assault. On [June 2, 2010], [Appellant] received concurrent sentences of twelve-and-one-half to twenty-five years, ten to twenty years, and two sentences of ten to twenty years on the above charges, respectively.

Following the imposition of the sentence, [Appellant] filed a post-sentence motion which was denied. [Appellant] thereafter, filed a notice of appeal as well as [a] requested [Rule] 1925(b) statement.

(*Id.* at 1).

Appellant raises two issues for our review:

IS [APPELLANT] ENTITLED TO AN ARREST OF JUDGMENT ON ALL CHARGES, WHERE THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE VERDICT AND WHERE THE COMMONWEALTH DID NOT PROVE THE CASE BEYOND A REASONABLE DOUBT?

IS [APPELLANT] ENTITLED TO A NEW TRIAL ON ALL CHARGES WHERE THE VERDICT IS AGAINST THE GREATER WEIGHT OF THE EVIDENCE AND WHERE THE VERDICT IS ONLY SUPPORTED BY SUSPICION, CONJECTURE AND SURMISE?

(Appellant's Brief at 3).

■ As a prefatory matter, during the pendency of this counseled appeal, Appellant filed a *pro se* application on November 1, 2010, for remand and appointment of new counsel, based on allegations of ineffective assistance of current court-appointed counsel. By order dated December 9, 2010, this Court denied the motion and directed the Prothonotary to forward a copy of the *pro se* motion to counsel. On

January 11, 2011, counsel responded to Appellant's *pro se* application for remand, and this Court deferred the response, by order dated February 22, 2011, to the panel assigned to decide the merits of the appeal.

We begin with an examination of the Pennsylvania Supreme Court's recent decision in *Commonwealth v. Jette,* —— Pa. ——, 23 A.3d 1032 (2011). In *Jette,* the Supreme Court reconfirmed its prior precedent in *Commonwealth v. Ellis,* 534 Pa. 176, 626 A.2d 1137 (1993) (*"Ellis II"*) (precluding consideration of *pro se* claims of ineffective assistance of appellate counsel on direct appeal, while that counsel is still representing appellant).[2] The Court explained its holding in *Ellis II* did not support the practice of requiring appellate counsel to petition for remand upon defendant's filing of a *pro se* petition alleging appellate counsel's ineffectiveness. *Jette, supra* at 1039. Rather than substantiating this *de facto* hybrid representation regime, the Court stated: *"Ellis II* specifically condemns the practice of filing separate *pro se* briefs" on appeal and reaffirmed "the Superior Court's past policy of requiring the litigant to make a choice between a counseled appeal and self-representation." *Id.* Further, the *Jette* Court explained, "with respect to direct appeals, a remand for the appointment of new counsel was never countenanced." *Id.*

In the *Jette* decision, the Supreme Court wholly abrogated the procedure described in *Commonwealth v. Battle,* 879 A.2d 266 (Pa.Super.2005), *appeal denied,* 588 Pa. 746, 902 A.2d 1238 (2006)[3] and clarified the process by which a defendant may pursue claims of ineffective assistance of appellate counsel in the context of post-conviction collateral proceedings:

[A]bsent a motion for change of counsel, where the appellant can demonstrate he has an irreconcilable difference with counsel that precludes counsel from representing him, or perhaps a timely petition for self-representation, or the retention of private counsel, the appellant must remain with appointed counsel through the conclusion of the appeal.

*Jette, supra* at 1042 (internal citation omitted). "[T]he proper response to any *pro se* pleading is to refer the pleading to counsel, and to take no further action on the *pro se* pleading unless counsel forwards a motion." *Id.* at 1044. For purposes of the present case, which involves a direct appeal from the judgment of sentence, *Jette* makes clear its prior precedent in *Ellis II* and its progeny still controls, such that an appellant must choose either: (1) to file petition to remove counsel, prior to counsel's filing a brief, and proceed *pro se, see Rogers, supra,* or (2) to remain with appellate counsel for the duration of the appeal and wait until PCRA review to assert claims of appellate counsel's ineffectiveness, *see Ellis II, supra* at 1139.[4]

**2.** The *Jette* Court cited two cases which exemplified the proper extension of its holding in *Ellis II: Commonwealth v. Pursell,* 555 Pa. 233, 724 A.2d 293 (1999), *cert. denied,* 528 U.S. 975, 120 S.Ct. 422, 145 L.Ed.2d 330 (1999) (applying *Ellis II* and holding courts will not be required to consider defendant's *pro se* filings when qualified counsel represents defendant); *Commonwealth v. Rogers,* 537 Pa. 581, 645 A.2d 223, 224 (1994) (applying *Ellis II* and holding appellant cannot petition for counsel's removal after counsel has

filed an appellate brief "simply because he wishes to file *pro se* briefs").

**3.** *See Battle, supra* at 268 (explaining where defendant alleges ineffective assistance of appellate counsel, counsel is required to petition Court for remand, "cite [defendant's] allegations of ineffectiveness and provide this Court with an evaluation of those claims")

**4.** This law is consistent with the Supreme Court's more recent decisions to defer review

■ Instantly, on this direct appeal, Appellant filed an application for remand and appointment of new counsel, citing allegations of ineffectiveness of his current court-appointed appellate counsel. Appellant filed the application after counsel had filed an appellate brief. This Court forwarded the application to appellate counsel, who filed a response, stating Appellant's assertions lacked merit at this stage or at any phase of review. Based upon counsel's review of the entire matter, and Appellant's objections, counsel concluded the only issues of arguable merit had been raised in the advocate's brief counsel had already filed, counsel had not defaulted on any other viable appellate claims, and urged this Court to decide the case on the merits without remand. *See generally Commonwealth v. Bracey*, 568 Pa. 264, 795 A.2d 935 (2001) (providing that even arguably meritorious claims may be omitted on appeal in favor of claims which, in appellate counsel's exercise of objectively rea-sonable professional judgment, offer greater prospect of securing relief) (citing *Jones v. Barnes*, 463 U.S. 745, 750–54, 103 S.Ct. 3308, 3312–14, 77 L.Ed.2d 987, 992–95 (1983) (stating: "[A]ppellate counsel ... need not (and should not) raise every non-frivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal")). Here, the purported disagreement between appellate counsel and Appellant involves which issues to pursue on direct appeal and how they should be articulated. Rather than alleging a circumstance that might warrant remand for appointment of new counsel,[5] Appellant forwards the exact argument that *Ellis II* emphatically rejected. *See Ellis II.* Consistent with prevailing law, we decline to remand the case and proceed to address the issues as presented in counsel's brief on appeal.

In his first issue on appeal, Appellant challenges his conviction for third degree

of ineffective assistance of counsel claims to timely filed PCRA petitions, with one limited exception that was recently called into question. *See Commonwealth v. Liston*, 602 Pa. 10, 977 A.2d 1089 (2009); *Commonwealth v. O'Berg*, 584 Pa. 11, 880 A.2d 597 (2005); *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002). *See also Commonwealth v. Bomar*, 573 Pa. 426, 826 A.2d 831 (2003), *cert. denied*, 540 U.S. 1115, 124 S.Ct. 1053, 157 L.Ed.2d 906 (2004) (holding appellate court may consider ineffective assistance of counsel claims on direct appeal when claims were raised in trial court, developed in certified record, and definitively decided by trial court).

5. Current case law does permit a change of counsel at the trial level, based on "irreconcilable differences." *See Commonwealth v. Wright*, 599 Pa. 270, 961 A.2d 119 (2008) (holding trial court did not abuse its discretion in denying defendant's request for change of counsel, where defendant failed to establish irreconcilable differences based on defendant's alleged "breakdown" in communication with trial counsel; trial court noted many meetings between counsel and defen-dant were court appearances or otherwise documented and further noted any failure in communication stemmed from defendant's lack of cooperation and refusal to follow counsel's advice); *Commonwealth v. Spotz*, 562 Pa. 498, 756 A.2d 1139 (2000), *cert. denied*, 532 U.S. 932, 121 S.Ct. 1381, 149 L.Ed.2d 307 (2001) (holding trial court did not abuse its discretion in denying defendant's request for change of standby counsel, based on defendant's allegations that counsel was afraid of him and that fear would prevent counsel from effectively acting as standby counsel, where conflict resulted from defendant's own threatening conduct and security measures his conduct required; security concerns would remain even if new counsel were appointed). There are few if any cases applying the concept of "irreconcilable differences" to disputes concerning counsel's representation while on direct appeal. We recognize the possibility of some occasion arising that might require immediate intervention, such as a sudden dire conflict of interest as a result of counsel's continued representation on direct appeal. That situation, however, is not implicated in the present case.

murder, alleging the Commonwealth did not present sufficient evidence to prove he acted with the requisite legal malice in discharging his weapon, where discharge of a weapon does not alone establish malice. According to Appellant, a third degree homicide must be the unintended consequence of a malicious act, not the provoked response of a man defending himself and his step-father from a mob on his front doorstep.

Appellant also contends the Commonwealth lacked sufficient evidence to sustain the criminal conspiracy conviction. Specifically, Appellant asserts the evidence failed to establish any agreement between him and his stepfather to commit a crime or even to discharge a weapon, where Appellant's step-father did not fire his weapon, and Appellant fired his weapon only after the confrontation escalated beyond their control. Appellant concludes this Court should enter an arrest of judgment on his convictions for third degree murder and criminal conspiracy.

In his second issue on appeal, Appellant argues in the alternative that his third degree murder conviction was against the weight of the evidence. Specifically, Appellant contends the trial court's finding that Appellant had acted with malice was so contrary to the evidence as to shock one's sense of justice. Instead, Appellant claims the record establishes Appellant discharged his weapon only after (1) a mob came to Appellant's house twice for the purpose of fighting him, and (2) a brawl between Appellant's stepfather and another man intensified. Furthermore, Appellant suggests there is nothing in the record to indicate Appellant had any intention of shooting prior to the repeated provocation. Appellant concludes this Court should

award him a new trial on his murder conviction, if the court does not grant an arrest of judgment.[6] We disagree with Appellant's contentions.

When examining a challenge to the sufficiency of evidence, our standard of review is as follows:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Jones,* 874 A.2d 108, 120–21 (Pa.Super.2005) (quoting *Commonwealth v. Bullick,* 830 A.2d 998, 1000 (Pa.Super.2003)). The following principles

**6.** In his brief, Appellant superficially mentions all of his convictions were against the weight of the evidence. Appellant, however, provides argument only on the element of malice relating to his third degree murder conviction.

apply to our review of a weight of the evidence claim:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the . . . verdict if it is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Small,* 559 Pa. 423, [435,] 741 A.2d 666, 672–73 (1999). Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Champney,* 574 Pa. 435, 444, 832 A.2d 403, 408 (2003), *cert. denied,* 542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004) (most internal citations omitted).

▆▆▆ The Crimes Code defines murder as follows:

§ 2502. Murder

(a) Murder of the first degree.—A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing.

(b) Murder of the second degree.—A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony.

(c) Murder of the third degree.—All other kinds of murder shall be murder of the third degree. Murder of the third degree is a felony of the first degree.

\* \* \*

18 Pa.C.S.A. § 2502(a)-(c). To establish the offense of third degree murder, the Commonwealth need only prove beyond a reasonable doubt that the defendant killed an individual, with legal malice, "*i.e.,* . . . wickedness of disposition, hardness of heart, wantonness, cruelty, recklessness of consequences, or a mind lacking regard for social duty." *Commonwealth v. Johnson,* 719 A.2d 778, 785 (Pa.Super.1998), *appeal denied,* 559 Pa. 689, 739 A.2d 1056 (1999) (citing *Commonwealth v. Young,* 494 Pa. 224, 227, 431 A.2d 230, 232 (1981) (holding sufficient evidence of malice existed to sustain third degree murder conviction, where defendant aimed loaded gun at victim and gun discharged, regardless of whether gun discharged accidentally or defendant intended only to scare victim)). Malice is established where an "actor consciously disregard[s] an unjustified and extremely high risk that his actions might cause death or serious bodily harm." *Id.* at 228, 431 A.2d at 232.

▆▆▆ Section 903 of the Crimes Code provides:

§ 903. Criminal conspiracy

(a) Definition of conspiracy.—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

> (2) agrees to aid such other person or persons in the planning or commis-

sion of such crime or of an attempt or solicitation to commit such crime.

\* \* \*

18 Pa.C.S.A. § 903. "To sustain a conviction for criminal conspiracy, the Commonwealth must establish the defendant: 1) entered into an agreement to commit or aid in an unlawful act with another person or persons; 2) with a shared criminal intent; and 3) an overt act was done in furtherance of the conspiracy." *Jones, supra* at 121 (quoting *Commonwealth v. Murphy*, 795 A.2d 1025, 1037–38 (Pa.Super.2002), *aff'd*, 577 Pa. 275, 844 A.2d 1228 (2004)).

> Circumstantial evidence may provide proof of the conspiracy. The conduct of the parties and the circumstances surrounding such conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt. Additionally:
>
>> An agreement can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode. These factors may coalesce to establish a conspiratorial agreement beyond a reasonable doubt where one factor alone might fail.

*Id.* at 121–22 (quoting *Commonwealth v. Greene*, 702 A.2d 547, 554 (Pa.Super.1997)) (internal citations and quotation marks omitted). Furthermore, "flight, along with other circumstantial evidence, supports the inference of a criminal conspiracy." *Commonwealth v. Marquez*, 980 A.2d 145, 150 (Pa.Super.2009) (*en banc*), *appeal denied*, 604 Pa. 704, 987 A.2d 160 (2009) (citing *Commonwealth v. Davalos*, 779 A.2d 1190 (Pa.Super.2001), *appeal denied*, 567 Pa. 756, 790 A.2d 1013 (2001)).

▮ Where the Commonwealth charges homicide generally, "the crime ultimately accomplished does not retroactively limit the scope of the original conspiracy." *Commonwealth v. Weimer*, 602 Pa. 33, 977 A.2d 1103 (2009) (holding evidence was sufficient to support conviction for third degree murder and related criminal conspiracy, where Commonwealth charged defendant with criminal homicide generally and conspiracy to commit criminal homicide; jury convicted defendant of third degree murder and conspiracy to commit criminal homicide).

Section 303 of the Crimes Code provides:

**§ 303 Causal relationship between conduct and result**

**(a) General rule.**—Conduct is the cause of a result when:

> **(1)** it is an antecedent but for which the result in question would not have occurred; and
>
> **(2)** the relationship between the conduct and result satisfies any additional causal requirements imposed by this title or by the law defining the offense.

\* \* \*

**(c) Divergence between probable and actual result.**—When recklessly or negligently causing a particular result is an element of an offense, the element is not established if the actual result is not within the risk of which the actor is aware or, in the case of negligence, of which he should be aware unless:

> **(1)** the actual result differs from the probable result only in the respect that a different person or different property is injured or affected or that the probable injury or harm would have been more serious or more extensive than that caused; or

(2) the actual result involves the same kind of injury or harm as the probable result and is not too remote or accidental in its occurrence to have a bearing on the liability of the actor or on the gravity of his offense.

\* \* \*

18 Pa.C.S.A. § 303. To establish criminal causation, the Commonwealth must satisfy the two-part test set forth in *Commonwealth v. Rementer*, 410 Pa.Super. 9, 598 A.2d 1300 (1991), *appeal denied*, 533 Pa. 599, 617 A.2d 1273 (1992). *Commonwealth v. Nunn*, 947 A.2d 756 (Pa.Super.2008), *appeal denied*, 599 Pa. 690, 960 A.2d 838 (2008). The first part of the test mirrors Section 303(a)(1), which requires that the defendant's conduct was "an antecedent but for which the result in question would not have occurred." *Rementer, supra* at 1305 (quoting 18 Pa.C.S.A. § 303(a)(1)). To satisfy part one of the test, the defendant's conduct "need not be the only cause of the victim's death in order to establish a causal connection." *Nunn, supra* at 760 (citing *Rementer, supra* at 1305). "Criminal responsibility may be properly assessed against an individual whose conduct was a direct and substantial factor in producing the death even though other factors combined with that conduct to achieve the result." *Nunn, supra* at 760.

▬▬▬ "The second part of the test is satisfied when the victim's death is the natural or foreseeable consequence of the defendant's actions." *Id.* The inquiry "is often addressed in terms of foreseeability." *Rementer, supra* at 1307. Moreover, "the fatal result of [a defendant's conduct] is not rendered unforeseeable merely because the precise agency of death ... could not have been foretold." *Id.* at 1308 (holding evidence was sufficient to establish defendant's conduct satisfied second part of test, where witnesses observed defendant punch victim several times in car

surrounded by other moving vehicles; it was entirely foreseeable that victim might flee defendant's attack and be struck by oncoming vehicle in close proximity). *See also Nunn, supra* (holding evidence of causal connection between defendants' actions and victim's death was sufficient to support involuntary manslaughter conviction, where convenience store owner positively identified appellant as robber, police knocked and were admitted to house where appellant was suspected of hiding, police encountered appellant in dimly-lit room and, when appellant suddenly drew what appeared to be weapon, police fired several shots; it was foreseeable that police would track down appellant and might fatally wound another whose presence during confrontation with defendant was unknown to officers); *Commonwealth v. McCloskey*, 835 A.2d 801, 808 (Pa.Super.2003), *appeal denied*, 577 Pa. 713, 847 A.2d 1281 (2004) (holding evidence was sufficient to establish causal nexus between defendant's conduct and death of three teenagers, where defendant knew underage party guests were drinking beer in her home, defendant allowed them to do so for several hours without interruption, supervision or comment, teens came and went throughout evening in their cars, nearly twenty of which were parked on defendant's property at some point; occurrence of fatal automobile accident following teenager's unlimited consumption of alcohol at unsupervised teenage beer party was neither "remote" nor "attenuated").

Instantly, the court reasoned as follows:

A. *Sufficiency of Evidence*

The Commonwealth presented sufficient evidence to support [Appellant's] conviction of third degree murder....

... [T]here is sufficient testimony to prove that either [Appellant] or Wynn shot and killed Jovonne Stelly.... [Appellant], along with Wynn and Scruggs

armed themselves with deadly weapons while inside the house with the intent to confront the mob outside, rather than call the police. The multiple witnesses at trial testified that both Wynn and [Appellant] pulled out guns and began shooting at people in the street. One bullet hit and killed the decedent. The testimony clearly demonstrates an action with "recklessness of consequences." While the accuracy of the testimony is up to the fact-finder to determine, the testimony is not so unreliable or contradictory as to award a new trial. Furthermore, after the incident, [Appellant] fled Philadelphia and resisted arrest with a deadly weapon when finally apprehended in Williamsport, PA, thereby demonstrating consciousness of guilt. Therefore the evidence was more than sufficient to support [Appellant's] conviction of third degree murder.

The Commonwealth, likewise, presented sufficient evidence to support [Appellant's] convictions for criminal conspiracy....

[Appellant], Sam Scruggs, and Michael Wynn were present together when guns were passed out inside the house at 5817 Pentridge Street. [Appellant] was Scruggs' stepson, while Wynn was a friend of [Appellant]. The three men armed themselves with the intent of going back outside to confront the mob. No phone call was made to authorities. Instead, the three men went outside together, verbally confronted the other group, and when tempers flared, began shooting at the group. The men intended to commit a criminal act, they agreed to go outside together and confront the group, and shots were fired in an overt act in furtherance of their intent. Therefore, the evidence is sufficient to sustain the conspiracy conviction because it is clear that the men acted pursuant to a plan and that overt acts

were committed in furtherance of that plan.... [E]ach member of the group can then be held responsible for the acts of his co-conspirators.

Finally, the Commonwealth presented sufficient evidence to support both counts of aggravated assault....

Witness testimony placed a gun in [Appellant's] hand. He consciously took possession of a gun while inside 5817 Pentridge St. with the intent of confronting the mob outside. Once gun fire began, [Appellant], along with Wynn attempted to cause bodily injury by shooting at individuals in the street. One bullet struck Kendall Sterns in the arm. Another struck Kalif Lee in the leg. The testimony and ballistics evidence are sufficient to prove that [A]ppellant committed the crime of aggravated assault.

### B. Weight of Evidence

[Appellant] argues ... "there was insufficient evidence to sustain the court's verdict due to numerous inconsistencies in the testimony of the Commonwealth's witness." This claim mirrors [Appellant's] sufficiency claim and should be rejected for this reason alone. Nevertheless, [Appellant's] weight of the evidence claim is meritless and should be denied.

\* \* \*

While there were discrepancies regarding who started and escalated the incident, the testimony consistently indicated that [Appellant] was the first to fire a weapon and that both [Appellant] and Wynn were firing into the street. Several unarmed people were injured by these shots and one person was fatally injured. Circumstantially, it follows that the verdicts of guilt entered in this matter do not shock one's sense of justice. Thus, this court did not commit an

abuse of discretion in denying [Appellant's] weight of the evidence claim and the claim should be denied.

(Trial Court Opinion at 4–8) (internal citations omitted).

The Commonwealth charged Appellant, *inter alia*, with murder generally, aggravated assault, and criminal conspiracy to commit both murder generally and aggravated assault. The record reveals Appellant was convicted of criminal conspiracy to commit both murder generally and aggravated assault. The court did not convict Appellant of criminal conspiracy to commit third degree murder. *See Weimer, supra.*

 Moreover, when viewed in the light most favorable to the Commonwealth, the evidence was sufficient to support Appellant's convictions for criminal conspiracy and third degree murder.[7] After a group of approximately twenty people approached Appellant on the street regarding a previous problem, Appellant went into his house and waited with Scruggs and Wynn until an unidentified man arrived and supplied firearms. Rather than call the police, Appellant and the others armed themselves and agreed among themselves to confront the group outside. They left the house, pursued the other group, and exchanged insults with them, at which time Scruggs drew his gun and pistol-whipped a man from the other group. When another person approached Scruggs from behind, Appellant fired his weapon at the group. Appellant, Scruggs and Wynn armed themselves with the intent to confront the other group, sought out and confronted the group, exchanged insults, and Appellant fired his gun at the group.

Thus the trial evidence was sufficient to establish a conspiracy to commit a criminal act.

Further, Appellant initiated a gun battle in the midst of numerous innocent bystanders on a street in a residential neighborhood. Some thirty to forty shots were fired. When Jovonne Stelly tried to protect her family, she was caught in the crossfire and died as a result. The finder of fact could reasonably infer a causal nexus between Appellant's conduct and Ms. Stelly's death because Appellant's conduct satisfied both statutory *criteria* for causation under the circumstances. *See* 18 Pa. C.S.A. § 303(c)(1)-(2); *Nunn, supra; McCloskey, supra; Rementer, supra.* The evidence also gave rise to the reasonable inference that Appellant had acted with malice or recklessness of consequences by willfully discharging a firearm in the direction of a group of people, including children. Therefore, the trial evidence was sufficient to establish third degree murder.

 Additionally, the Commonwealth presented multiple eyewitnesses who testified Appellant was the first to fire a gun, and he fired into the street where the victims were located. Thus, the trial court properly concluded Appellant's convictions did not shock one's sense of justice. We see no reason to disturb the verdict on the grounds alleged. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

---

**7.** In his appellate brief, Appellant does not actually challenge the sufficiency of the evidence for his aggravated assault convictions. Thus, we conclude he abandoned that claim on appeal. Nevertheless, the Commonwealth presented eyewitness testimony that Appellant fired his weapon in the direction of Kendall Sterns and Kalif Lee, and both victims were struck by bullets.