J-S60045-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| LANGSTON LAMAR PALMER | |
| Appellant | No. 371 MDA 2014 |

Appeal from the Judgment of Sentence February 4, 2014
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0001758-2013

BEFORE:  OTT, J., STABILE, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                **FILED NOVEMBER 07, 2014**

Langston Palmer fired three shots at a police officer who was pursuing him in a high crime area in the City of York, Pennsylvania.  Based on this incident, a jury found Palmer guilty of assault of a police officer[1], reckless endangerment[2] and carrying firearms without a license[3].  The trial court sentenced Palmer to concurrent terms of imprisonment of 20-40 years on the assault conviction[4], 1-2 years on the reckless endangerment conviction and 2½-5 years on the firearms conviction.

---

[1] 18 Pa.C.S. § 2702.1(a).
[2] 18 Pa.C.S. § 2705.
[3] 18 Pa.C.S. § 6106.
[4] An individual convicted under section 2702.1(a) is subject to a sentence of imprisonment of "not more than 40 years."  18 Pa.C.S. § 2702.1(b). Palmer's sentence for this offense is within the statutory maximum.  He does not challenge the legality of his sentence in this appeal.

Palmer filed a timely notice of direct appeal and, after receiving two extensions, a timely Pa.R.A.P. 1925(b) statement. He argues in this appeal that (1) the evidence was insufficient to sustain his convictions, and (2) the trial court erred by admitting a police officer's testimony that he observed Palmer participating in a drug transaction immediately before the incident in question. Finding no merit in either argument, we affirm.

Palmer's first argument is a challenge to the sufficiency of the evidence. The standard we apply in reviewing the sufficiency of the evidence is

> whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Devine*, 26 A.3d 1139, 1145 (Pa.Super.2011).

- 2 -

The evidence adduced at trial was as follows: at 4 a.m. on September 7, 2012, York City Police Officer Christopher Roosen was patrolling York's western district when he observed what he believed was a drug deal near the intersection of Princess and West Streets. NT 64-67. Officer Roosen saw Palmer on a bicycle leaning into a black vehicle occupied by two women. NT 67. As Officer Roosen approached Defendant, he heard a callout (a signal used to indicate the presence of police). Palmer saw Officer Roosen and began travelling toward West Princess Street. NT 67-68. Officer Roosen radioed for back-up and continued to pursue Palmer. NT 68, 81.

Officer Roosen pulled his marked police cruiser next to Palmer and asked him to stop, but Palmer kept riding and avoided eye contact with the officer. NT 81. The officer activated his overhead lights and again asked Palmer to stop, but Palmer continued to pedal faster. He rode his bike onto the sidewalk, jumped off the bike and continued by foot. NT 82. Officer Roosen began chasing Palmer on foot. NT 83. Palmer fled northbound through a small breezeway with Officer Roosen approximately 10 feet behind him. *Id*. Officer Roosen was unable to see Palmer's hands or any firearms but did not see anyone else present. *Id*.

Palmer turned into a gravel alleyway, and Officer Roosen was within a few seconds of rounding the same corner when he heard three loud shots. NT 87. Officer Roosen testified that the shots "almost sounded right on top of [me]." NT 87. Officer Roosen stopped his pursuit, drew his firearm, and radioed that shots had been fired. *Id*.

Officer Roosen resumed his pursuit and ran onto West Street. NT 90. He checked the 900 block of School Place, where, again, no one was present, NT 90, 95, and he radioed for additional units. NT 95. At this time, Burrell Hughes approached Officer Roosen and screamed that Officer Roosen had shot "Tank" (Palmer's street name). *Id*. Officer Roosen told Hughes that he did not shoot Tank, but rather that Tank had shot at him. NT 95-96. Hughes was detained and searched for weapons; none were found on him. *Id*. Officer Roosen and Officer Jay returned to the gravel alleyway, where they found three shell casings of the same make and model in close proximity to one another. NT 98, 102. The casings appeared to be fresh, since there was no moisture, grass, gravel, or dirt on them. *Id*. The officers did not see any remnants of fireworks, firecrackers, or other items that would have created a sound similar to a gun shot. NT 99.

Officer Roosen prepared and executed a search warrant for Palmer's address but did not recover any firearms. NT 103-04. Police officers found Palmer's state-issued identification card in his cargo shorts. *Id*. Officer Roosen contacted the Pennsylvania State Police to see if Palmer had a license to carry a concealed weapon and learned that he had no such license. NT 104-05.

The legislature defines the offense of assault of a law enforcement officer as follows: "A person commits a felony of the first degree who attempts to cause or intentionally or knowingly causes bodily injury to a law

enforcement officer, while in the performance of duty and with knowledge that the victim is a law enforcement officer, by discharging a firearm." 18 Pa.C.S. § 2702.1(a).  To establish the defendant's guilt, the Commonwealth must prove that (1) the defendant attempted to cause, or intentionally or knowingly caused, bodily injury, (2) the victim was a law enforcement officer acting in the performance of his duty, (3) the defendant had knowledge the victim was a law enforcement officer, and (4) in attempting to cause, or intentionally or knowingly causing such bodily injury, the defendant discharged a firearm.  ***Commonwealth v. Landis***, 48 A.3d 432, 445 (Pa.Super.2012) (*en banc*).   Section 2702.1 does not require the Commonwealth to prove that the law enforcement officer actually suffered bodily injury when the defendant discharged his firearm.  ***Id***.

The evidence, construed in the light most favorable to the Commonwealth, establishes each element of this offense beyond a reasonable doubt.  While Officer Roosen was on patrol in the performance of his duties as a police officer, he observed Palmer engage in an apparent drug sale in a high crime area and attempted to stop Palmer for further investigation.   Palmer fled from the officer's marked police vehicle on a bicycle and then fled on foot after the officer commanded him to stop.  The officer exited his police vehicle and chased Palmer into an alleyway, where Palmer shot at the officer three times at close range.  Fortunately, none of the shots struck the officer.  The officer did not observe any other individual

in the area. Officers Roosen and Jay later recovered three fresh shell casings of the same make and model in the alleyway. This evidence proves that (1) Officer Roosen was a law enforcement officer acting in the performance of his duties; (2) Palmer knew that Officer Roosen was a law enforcement officer; and (3) Palmer attempted to cause bodily injury to Officer Roosen by discharging a firearm. This clearly is sufficient to sustain Palmer's conviction under section 2702.1. ***Commonwealth v. Martuscelli***, 54 A.3d 940, 949-50 (Pa.Super.2013) (evidence supported conviction for assault of law enforcement officer, where defendant was carrying gun and indicated that he was seeking to commit suicide by inducing police to shoot him, defendant indicated an intent to shoot as many police officers as possible in the process, defendant illuminated officers with bright light as they stood in the dark and fired shots at them, officers heard bullets passing by them and returned fire, defendant used cover and concealed himself, defendant asked how many police he had shot and was disappointed to learn that no officers had been injured, defendant told personnel at hospital that he had been "looking to take them out," and expert testified that a suicidal person can have both suicidal and homicidal intent).

The same evidence is sufficient to sustain Palmer's conviction for reckless endangerment. An individual is guilty of this offense if he "recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S. § 2705. "Serious

bodily injury" under this provision is "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ." ***Commonwealth v. Hopkins***, 747 A.2d 910, 915 (Pa.Super.2000). To sustain a conviction for recklessly endangering another person, "the Commonwealth must prove that the defendant had an actual present ability to inflict harm and not merely the apparent ability to do so." ***Id.*** "Danger, not merely the apprehension of danger, must be created." ***Id.*** at 916. "The *mens rea* for recklessly endangering another person is 'a conscious disregard of a known risk of death or great bodily harm to another person.' " ***Id.*** (*citing* ***Commonwealth v. Peer***, 684 A.2d 1077, 1080 (Pa.Super.1996)). "Brandishing a loaded firearm during the commission of a crime provides a sufficient basis on which a fact-finder may conclude that a defendant proceeded with conscious disregard for the safety of others, and that he had the present ability to inflict great bodily harm or death." ***Id.*** Palmer's act of shooting at Officer Roosen constitutes reckless conduct which placed placed Officer Roosen in danger of death or serious bodily injury. Consequently, the evidence is sufficient to sustain his conviction for reckless endangerment.

Finally, the evidence is sufficient to sustain Palmer's conviction for carrying a firearm without a license. Generally, "any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or

about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree." 18 Pa.C.S.A. § 6106(a)(1). Thus, a person in Pennsylvania must have a valid Pennsylvania license to carry a firearm in any vehicle or concealed on his or her person. **_Commonwealth v. McKown_**, 79 A.3d 678, 684-85 (Pa.Super.2013).

Here, the evidence shows that Palmer discharged a firearm in a location other than his place of abode or fixed place of business. Officer Roosen contacted the Pennsylvania State Police, who informed him that Palmer did not have a license to carry a concealed weapon. Viewed in the light most favorable to the Commonwealth, this evidence proves all elements of section 6106 beyond a reasonable doubt.

For these reasons, we conclude that Palmer's challenge to the sufficiency of the evidence is devoid of substance.

In his second argument on appeal, Palmer argues that the trial court erred by admitting Officer Roosen's testimony that he observed Palmer participating in a drug transaction immediately before the confrontation with Palmer that resulted in the criminal offenses discussed above[5].

---

[5] Palmer preserved his objection to this evidence for appeal by timely raising an objection when Officer Roosen testified about the suspected drug transaction during trial. N.T., 12/4/13, pp. 70-75.

The admission or exclusion of evidence is within a trial court's discretion, and will only be reversed for an abuse of that discretion. ***Keffer v. Bob Nolan's Auto Service, Inc.***, 59 A.3d 621, 631 (Pa. Super. 2012).

Here, evidence of the drug transaction was admissible as part of the history or natural development of the case. Although evidence of bad acts is inadmissible to prove a defendant acted in conformity with those acts or to demonstrate a criminal propensity, Pa.R.E. 404, there are several exceptions to this rule, particularly situations where the distinct crimes are part of a chain or sequence of events which form the history of the case and are part of its natural development (sometimes called the "res gestae" exception). ***Commonwealth v. Billa***, 555 A.2d 835, 840 (Pa.1989). Our Supreme Court has consistently recognized that admission of distinct crimes may be proper where it is part of the history or natural development of the case. ***Commonwealth v. Brown***, 52 A.3d 320, 326 (Pa.Super.2012) (collecting cases).

Where the *res gestae* exception is applicable, the trial court must balance the probative value of such evidence against its prejudicial impact. ***Commonwealth v. Powell****,* 956 A.2d 406, 419 (Pa.2008). In conducting this balancing test,

> courts must consider factors such as the strength of the 'other crimes' evidence, the similarities between the crimes, the time lapse between crimes, the need for the other crimes evidence, the efficacy of

> alternative proof of the charged crime, and 'the degree to which the evidence probably will rouse the jury to overmastering hostility.' McCormick, *Evidence* § 190 at 811 (4th ed.1992). ***See also Commonwealth v. Frank***, 395 Pa.Super. 412, 577 A.2d 609 (1990) (enumerating balancing test factors, including ability for limiting instruction to reduce prejudice).

***Commonwealth v. Weakley***, 972 A.2d 1182, 1191 (Pa.Super.2009).

Here, the evidence of the transaction was admissible – indeed, indispensable -- to demonstrate Officer Roosen's reason for pursuing Palmer (to investigate a suspected drug sale) and to demonstrate Palmer's reason for fleeing from Officer Roosen and firing a gun at him (to avoid arrest for selling drugs). Had the court precluded admission of this evidence, the officer's conduct would have appeared nonsensical to the jury, and the jury would not have learned Palmer's motive for shooting at the officer. Moreover, the suspected drug transaction immediately preceded Palmer's flight from Officer Roosen and his attempt to shoot the officer. No other evidence could have been substituted to explain the reason for the officer's pursuit or the motive for Palmer's crimes. Therefore, we conclude that the trial court properly admitted this evidence, and that its probative value outweighed its prejudicial impact[6].

_____

[6] We note that in many cases, the trial court gives a limiting instruction to the jury cautioning the jury to use evidence of uncharged misconduct only for certain purposes but not as evidence of guilt for the crimes charged. *(Footnote Continued Next Page)*

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/7/2014

*(Footnote Continued)* ─────────────

Here, the trial court offered to give a limiting instruction that the evidence was admissible only to detail the natural history of the case and Palmer's motive, but defense counsel turned the court's offer down. N.T., 12/4/13, p. 76.