J-A07033-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
:                PENNSYLVANIA
:
v.                         :
:
:
:
JASON M. GOSHORN            :
:
Appellant              :   No. 782 MDA 2025

Appeal from the Judgment of Sentence Entered June 5, 2025
In the Court of Common Pleas of Perry County Criminal Division at
No(s):  CP-50-CR-0000302-2024

BEFORE:  BOWES, J., DUBOW, J., and NEUMAN, J.

MEMORANDUM BY NEUMAN, J.:          **FILED: APRIL 13, 2026**

Appellant, Jason M. Goshorn, appeals from the judgment of sentence of

10 to 23 months' incarceration followed by 3 years' probation, imposed after

he was convicted of, *inter alia*, Criminal Trespass - Enter Structure, 18 Pa.C.S.

§ 3503(a)(1)(i), and Simple Assault, 18 Pa.C.S. § 2701(a)(2).  We affirm.

The trial court summarized the facts of this case as set forth at trial, as

follows:

> In their case-in-chief, the Commonwealth provided the testimony
> of the victim, and landlord, Bradford Shover, who testified that he
> owns and operates numerous mobile home parks, including the
> subject lot rented by Appellant at 43 Bailey Run Street, Newport,
> Perry County, Pennsylvania.  Appellant, along with his wife, Ashely
> Zellers, owned the trailer, and Mr. Shover owned the lot [on]
> which it sat.  It was typical for Appellant and Ms. Zellers to be late
> [with] their rent.  Further, this was not the first time that Mr.
> Shover had to initiate proceedings against Appellant for failure to
> pay their rent[;] in fact, in January of 2024, a full eviction process
> occurred where Appellant and Ms. Zellers did not leave the
> property, and after they eventually came up with the proper

amount of money, Mr. Shover allowed them to move back onto the property.

On May 28, 2024, Mr. Shover filed an eviction action against Appellant and … [Ms.] Zellers, with the Magisterial District Court 41-3-03, and on or about June 10, 2024, a hearing was held before The Honorable Richard Gibney, where judgment was entered in Mr. Shover's favor in the amount of back rent which equaled $2,463.55. On June 26, 2024, after nonpayment, and no appeal filed by Appellant, Mr. Shover then filed for possession of the property, which was then granted by [Magistrate] Judge Gibney.

… Appellant and [Ms. Zellers] were served with a Notice to Vacate the Property, which had a vacate date of July 8, 2024, by 10:00 a.m., if no payment of the judgment issued on June 10, 2024, was made. On July 8, 2024, Mr. Shover stated that … Appellant and [Ms. Zellers] were still on the property past 10:00 a.m. Mr. Shover testified that he, along with a constable, arrived [at] the property at around 9:30 a.m. on July 8, 2024, and was told by Appellant that [Ms. Zellers] left the property in order to go and retrieve the funds necessary to pay the $2,463.55 judg[]ment by the 10:00 a.m. deadline. Later that morning, after the 10:00 a.m. deadline, Mr. Shover and the [c]onstable arrived back at the subject property [where] they were greeted by Appellant and [Ms. Zellers,] who informed Mr. Shover that they were unable to acquire all the money necessary to pay the judg[]ment. Mr. Shover then left the property, as the constable informed him he would finish up with the eviction process. After such, Mr. Shover never received a call from the constable that the eviction was successful. On July 11, 2024, Mr. Shover returned to the property and found that Appellant and Ms. Zellers were still occupying the property. At this point in time, Mr. Shover called the Pennsylvania State Police who came out to the property, spoke to Appellant and Ms. Zellers, and came up with a resolution. Mr. Shover was to give Appellant and Ms. Zellers another day to leave the property. The next day, on July 12, 2024, Mr. Shover arrived back at the property around 8:00 a.m. [where] he was greeted by Appellant. Mr. Shover told Appellant he had until 4:00 p[.]m[.] that day to collect his belongings and vacate the property[. A]t that point in time, Appellant began to raise his voice and become agitated by using threatening language toward Mr. Shover. Mr. Shover then left the property[] and did not return until July 17, 2024. On July 17, 2024, Mr. Shover went to the property[] and had three (3) Pennsylvania State Troopers with him. While at the property,

- 2 -

after unsuccessful attempts at announcing and knocking on the trailer door, Troopers were unable to find Appellant and Ms. Zellers; it was then assumed that they had vacated the property. Subsequently, Mr. Shover arranged with a[n individual named] Skylar Turpin to assist him in changing the locks to the mobile home. Since the front door to the mobile home was locked, Mr. Shover decided to enter the mobile home through a window unit air conditioner that was in place on the side of the residence.[1] While attempting to pull the air conditioner out of the window, Appellant and Ms. Zellers came running towards Mr. Shover, Appellant carrying a sledgehammer, and Ms. Zellers carrying a screwdriver. Mr. Shover stated that he believed he was hit over the head with the sledgehammer, and then later hit in the eye with the screwdriver. Overall, Mr. Shover suffered a broken finger, along with several cuts to the top of his head, stab wounds above his right eye, and a few puncture marks on his back.

Further, the Commonwealth presented the testimony of Pennsylvania State Troopers who corroborated Mr. Shover's retelling[,] in that Troopers were out to the property numerous times before the altercation, and that Appellant was well aware that he was to leave the property. The Troopers had a reasonable belief at the time that Appellant and his wife had left the property as of July 17, 2024, when they attempted to knock on the door of the trailer with no response.

During their case-in-chief, Defense offered the testimony of[]… [Ms.] Zellers, who testified that she was made aware[,] by a camera at their trailer[,] that on July 17, 2024, someone was on the porch of the trailer. Ms. Zellers further testified that due to past experiences of theft and vandalism to their trailer, [she] and Appellant went and stepped onto the property in order to check out what was going on. They returned to their trailer, and became aware of individuals attempting to enter the trailer through the window air conditioning unit. Individuals who just so happened to be Mr. Shover, the owner and possessor of the property. Believing that they had a right to protect their personal property, Ms. Zellers and Appellant attempted to defend their property, causing the injuries to Mr. Shover. Ms. Zellers was under the same impression as Appellant that they were still allowed on the property under the

---

[1] As discussed *infra*, Appellant testified he and Ms. Zellers were present in the trailer when Mr. Shovers was on the porch and discovered the door was locked.

- 3 -

"Mobile Home and Landlord Tenant Acts." Ms. Zellers claimed that they attempted to contact Mr. Shover numerous times in order to pack up and retrieve all of their personal property. Yet, Ms. Zellers acknowledged, and did not refute[,] that the eviction took place on July 8, 202[4].

Appellant himself testified that from the date of the eviction until the July 17, 2024 incident, he was not residing within the trailer, and that he was sleeping at either his mother's or his friends' residences. Appellant believed that under the "Mobile Home Act" and/or the "Landlord Tenant Act" that he was allowed to come back to the property to retrieve his personal property. Appellant also acknowledged[,] and did not refute[,] that the eviction date was July 8, 202[4], and that on July 17, 202[4], his physical being was on the property.

Trial Court Opinion ("TCO"), 9/2/25, at 3-7 (internal citations to the record omitted).

Appellant proceeded to a jury trial on February 24-25, 2025, at the close of which he was convicted of, *inter alia*, Criminal Trespass and Simple Assault. On June 5, 2025, the court sentenced Appellant to a term of 5 to 13 months' incarceration followed by 2 years' probation for Criminal Trespass, and 5 to 10 months' incarceration followed by 12 months' probation for Simple Assault. The court imposed Appellant's sentences to run consecutively, for an aggregate term of 10 to 23 months' incarceration followed by 3 years' probation.

No post-sentence motions were filed. The trial court summarized the post-sentencing, procedural history of this case, as follows:

On June 11, 2025, Appellant filed a timely appeal to the Superior Court. Accordingly, this [c]ourt directed that he file a Concise Statement of Matters Complained of on Appeal within twenty-five (25) days from the [c]ourt's [o]rder dated June 12, 2025. Counsel David Wilson, Esq[.,] filed a Motion to Withdraw as Counsel along

with a Motion to Extend Time to File Statement of Matters Complained Of on July 1, 2025. Counsel's Motion to [W]ithdraw was denied, and the Motion to Extend Time was granted on July 8, 2025. [The trial court granted Appellant an additional twenty (20) days to file his Statement of Matters Complained of on Appeal.]

After denial of Counsel's Motion to Withdraw, trial counsel filed a Motion for Reconsideration, which was heard on August 19, 2025. At said hearing, it was determined that there was a showing of [a] fundamental disagreement between Appellant and Attorney Wilson, and that Appellant insisted on taking action that [] Attorney Wilson considered to be repugnant. Subsequently, through an Order dated August 20, 2025, Shawn Stottlemyer, Esq.[,] was appointed as new counsel for Appellant.

Before the appointment of substitute counsel, trial counsel filed Appellant's Concise Matters Complained of on Appeal on July 18, 2025, alleging that the guilty verdict imposed by the jury on Count 4 of the criminal information, [C]riminal [T]respass[,] was against both the weight and sufficiency of the evidence.

TCO at 1-2.

On appeal, Appellant states two issues for our review:

1. Whether the evidence was sufficient to convict Appellant of Criminal Trespass when the Commonwealth failed to prove beyond a reasonable doubt that Appellant knew he was not licensed or privileged to be on the premises?

2. Whether the evidence was sufficient to convict Appellant of Criminal Trespass when it was not proven that Appellant gained entry, or remained in a building or occupied structure?

Appellant's Brief at 3.

Initially, we note:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by

the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Devine*, 26 A.3d 1139, 1145 (Pa. Super. 2011) (citation and brackets omitted).

Appellant's offense of Criminal Trespass – Enter Structure is defined as follows:

**(a) Buildings and occupied structures.--**

(1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he:

(i) enters, gains entry by subterfuge or surreptitiously remains in any building or occupied structure or separately secured or occupied portion thereof[.]

18 Pa.C.S. § 3503(a)(1)(i).

Here, Appellant first argues the Commonwealth did not prove he knew he was not licensed or privileged to be on the property. Our review of the record indicates the Commonwealth's evidence established Appellant knew he had been evicted and was therefore not licensed or privileged to be on the property. Specifically, Mr. Shovers testified at trial that he filed for eviction against Appellant, received a judgment in his favor, and upon nonpayment, filed for an order of eviction, which was granted by the Magistrate. *See* N.T.

Jury Trial Day 1, 2/24/25, at 35-38; *see also* Commonwealth's Exhibit 1.

Next, Donald McKee, a Pennsylvania State Constable, testified he posted the

eviction order and notice on Appellant's property on June 26, 2024. *See* N.T.

Jury Trial Day 1 at 83. Constable McKee then testified that on July 8, 2024,

he executed the order of eviction, watched Appellant and Ms. Zellers fill their

truck with their possessions, and then followed their truck out of the trailer

park. *See id.* at 84.

Corporal Richard Weinstock of the Pennsylvania State Police testified

that on July 11, 2024, he was dispatched to the trailer in question where he

observed:

> Mr. Shover was having an argument with the tenants at the
> property and they – he just wanted them to leave their residence.
> They wouldn't leave. So[,] he showed some paperwork. They
> stated that they had paperwork. They weren't able to provide
> anything. And from there we came to a mutual agreement,
> everybody, that they were going to come back the next day, get
> their property, and then vacate.

*Id.* at 89. Ms. Zellers testified to the interaction with Corporal Weinstock as

follows:

> Corporal Weinstock and Trooper Boozel were out there on the 11th
> to inform me that I was not supposed to be there.
>
> I explained to them I had paperwork to show them[,] which was
> part of the Mobile Home Act. I explained to them the whole entire
> situation. He agreed – they kind of agreed but they said, look[,]
> I have to go with what the paperwork is. They said: This is really
> a civil matter, but at this point I need you to grab your belongings
> and you need to leave.

*Id.* at 219. Mr. Shovers testified that on July 12, 2024, he returned "at 8:00

o'clock [in the morning]. [Appellant] meets me outside. I tell him: Okay

- 7 -

here's what we're going to have to do.  You got till 4:00 o'clock to get your stuff and get out.  I'm coming back to change the locks." ***Id.*** at 41.

Finally, during Appellant's testimony, he agreed multiple times he was evicted on July 8, 2024.  First, Appellant testified:

> [The Commonwealth]: Then [Ms. Zellers] gets a notification someone's at your trailer, right?
>
> [Appellant]: Yeah.
>
> [The Commonwealth]: This would be nine days after you got evicted by Mr. Shover from that trailer?
>
> [Appellant]: Mm-hmm.

***Id.*** at 250.  Appellant then testified:

> [The Commonwealth]: Did [Mr. Shover] not have possession of the property?
>
> [Appellant]: No, he had possession of the lot.  And if you just hold one minute I can explain that to you.  The way it works, after the eviction, [Mr. Shover] gets possession of his lot.  He owns the ground; but we own the trailer.

***Id.*** at 250-251.  Additionally, Appellant testified:

> [The Commonwealth]: You were already evicted, sir, were you not?  July 8th you were evicted, weren't you?
>
> [Appellant]: Yes….

***Id.*** at 252.

> In response to Appellant's argument on this issue, the trial court stated:
>
> Simply put, the jury found credible testimony put forth by the Commonwealth that Appellant did not have a right to be on the property on July 17, 2024, and that testimony clearly proved every element of the charged crime. … Appellant was evicted from the property on July 8, 202[4], and continued to stay on the property, without proper permission by Mr. Shover.  … Appellant

- 8 -

was given multiple notices and extra chances to either retrieve his personal property, or make arrangements to do so, and he failed to do either.

TCO at 7. Upon consideration of the evidence set forth *supra*, we agree with the trial court and conclude the evidence was sufficient to support that Appellant had knowledge an order of eviction had been issued and he had been evicted from the property. Thus, his argument that the evidence failed to prove he knew he was not licensed or privileged to be on the property is meritless.

Regarding Appellant's second issue, that the Commonwealth failed to establish his presence in the trailer, we conclude it is waived, as Appellant failed to specify this claim in his Rule 1925(b) statement. Therein, he stated:

The ground is that both the weight and sufficiency of the evidence were lacking.[2]

Though the Commonwealth proved that eviction proceedings were underway, there was sufficient ambiguity about [Appellant]'s right to be at the property on July 17, 2024[,] because[:]

1) he or his family members continued to own the trailer, which was undisputed[;]

2) he had not retrieved all his possessions, reasonably believed he had a legal right to do so, and further reasonably believed he had a statutory period of time to accomplish this, which had not run on July 17, 2025, pursuant to the Landlord-Tenant Act and the

_____

[2] We note Appellant does not raise any claim regarding the weight of the evidence on appeal. Thus, it is waived. **See** Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."); **Commonwealth v. Felder**, 247 A.3d 14, 20 (Pa. Super. 2021) ("[A]n issue identified on appeal but not developed in the appellant's brief is abandoned, and therefore, waived.").

> Manufactured Home Community Rights Act. Even if [Appellant] was mistaken in his belief, he reasonably believed this and testified to the same[;]
>
> 3) [Mr. Shover] did not prove sufficient communication efforts with [Appellant] regarding this retrieval of possessions (or the trailer itself)[;]
>
> 4) past practice had been that [Appellant] could "pay and stay" even while eviction proceedings were underway, up until the last minute, and [Appellant] came to rely on that[; and]
>
> 5) [Appellant] was acting lawfully to protect his trailer and its contents after notification of a disturbance on the Wyze app, and was privileged against a charge of trespass for that reason.
>
> The bottom line is that with all of these factors, [the] Commonwealth did not prove beyond a reasonable doubt that [Appellant] knew he had no "license or privilege" to be on the premises.

Rule 1925(b) Statement, 7/18/25, at unnumbered 1-2.

In his Concise Statement, Appellant failed to raise any argument that he was not present in the trailer itself on July 17, 2024, and focused solely on his "license or privilege" argument. As such, the trial court only briefly addressed Appellant's presence on the property in general. *See* TCO at 6-7 ("Ms. Zellers further testified that due to past experiences of theft and vandalism to their trailer, [she] and Appellant went and stepped onto the property in order to check out what was going on" and "Appellant also acknowledged[,] and did not refute that[,] … on July 17, 202[4], his physical being was on the property."). Accordingly, Appellant's second issue is waived on this basis. *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this

paragraph (b)(4) are waived."); Rule 1925(b) Order, 6/12/25, at unnumbered 1 ("Furthermore, any issue not properly included in the Statement timely filed and served pursuant to Pa.R.A.P. 1925(b) shall be deemed waived[.]"); *see also Greater Erie Indus. Dev. Corp. v. Presque Isle Downs, Inc.*, 88 A.3d 222, 225 (Pa. Super. 2014) (*en banc*) ("[I]n determining whether an appellant has waived his issues on appeal based on non-compliance with [Rule] 1925, it is the trial court's order that triggers an appellant's obligation[. T]herefore, we look first to the language of that order.") (citations omitted; some brackets added).

Nevertheless, even if not waived, we would conclude Appellant's argument is meritless, as the Commonwealth's evidence proved Appellant was present in the trailer. Namely, Appellant himself testified:

> We got up there [to the trailer]. Didn't see anybody around. And knowing that [Mr. Shover] went in the house before, [we] figured he might be in there again. So[,] we went to go check. There was nobody in the house. And then as soon as we walked in there, Ashely shut the door behind us and she locked it. … And then while we were in there[,] we heard something out on the porch.

N.T. Jury Trial Day 1 at 240-41. This evidence was sufficient to establish Appellant entered the trailer in question on July 17, 2024.

In sum, viewing the record in the light most favorable to the Commonwealth, it is clear there was sufficient evidence to enable the jury to find the Commonwealth had proven, beyond a reasonable doubt, every element of the charge of Criminal Trespass – Enter Structure. Therefore, we conclude that Appellant's first issue challenging the sufficiency

of the evidence is meritless, and even if his sufficiency challenge on his second issue were not waived, it would be meritless, as well. As Appellant is not entitled to relief, we affirm the judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.


Benjamin D. Kohler, Esq.
Prothonotary


Date: 04/13/2026