J-S59035-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| MARK NORTON | |
| Appellant | No. 3387 EDA 2015 |

Appeal from the Judgment of Sentence August 13, 2015
in the Court of Common Pleas of Bucks County Criminal Division
at No(s): CP-09-CR-0000754-2015

BEFORE: BENDER, P.J.E., OLSON, J., and FITZGERALD,[*] J.

MEMORANDUM BY FITZGERALD, J.:           **FILED SEPTEMBER 07, 2016**

Appellant, Mark Norton, appeals from the judgment of sentence entered in the Bucks County Court of Common Pleas following a jury trial and conviction for retail theft,[1] criminal conspiracy,[2] and possession of an instrument of crime.[3] Appellant challenges the sufficiency and weight of the evidence. We affirm.

We adopt the facts set forth in the trial court's opinion. **See** Trial Ct. Op., 2/29/16, at 1-5. Following a jury conviction, the court sentenced Appellant on August 13, 2015, to fifteen to sixty months' imprisonment. Appellant filed a timely post-sentence motion challenging, inter alia, the

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 3929(a)(1).

[2] 18 Pa.C.S. § 903(a).

[3] 18 Pa.C.S. § 907(a).

weight of the evidence. The court denied Appellant's motion on October 28, 2015, specifically stating:

> [Court] . . . I don't think I should overturn a jury's verdict unless the evidence is obviously not sufficient; in other words, whether it's clear to me that the verdict is erroneous, and, frankly, it's not. I believe that the evidence was presented to the jury, and I believe the jury considered all the evidence and determined that this-these crimes took place. And I believe it was a fair and—the evidence was fairly presented.

N.T., 10/28/15, 12-13.

Appellant timely appealed and timely filed a court-ordered Pa.R.A.P. 1925(b) statement. The court filed a responsive Pa.R.A.P. 1925(a) opinion. On appeal, Appellant raises the following issues for review:

> A. Was the evidence sufficient to support the verdict for retail theft, conspiracy to commit retail theft and possessing instruments of crime?
>
> B. Was the verdict against the weight of the evidence?

Appellant's Brief at 4.

Appellant argues that the evidence was insufficient to support his convictions because no direct evidence proved that he actually removed stolen property from a department store. Instead, Appellant claims that the evidence presented at trial only established that he was merely present at the store and not necessarily helping the other two individuals involved engage in retail theft. Likewise, in his second issue, Appellant avers that his convictions were against the weight of the evidence because he testified that he did not intend to steal anything from the department store at issue and

because there was no evidence of him directly removing any items from the store.

The standard of review for a challenge to the sufficiency of the evidence is *de novo*, as it is a question of law. ***Commonwealth v. Ratsamy***, 934 A.2d 1233, 1235 (Pa. 2007). As our Supreme Court has explained:

> [T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction . . . does not require a court to ask itself whether **it** believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, it must determine simply whether the evidence believed by the fact-finder was sufficient to support the verdict.
>
> \* \* \*
>
> When reviewing the sufficiency of the evidence, an appellate court must determine whether the evidence, and all reasonable inferences deducible from that, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all of the elements of the offense beyond a reasonable doubt.

***Id.*** at 1235-37 (citations and quotation marks omitted).

Appellant was convicted under the following statutes:

**§ 3929. Retail theft**

**(a) Offense defined.**—A person is guilty of a retail theft if he:

(1) takes possession of, carries away, transfers or causes to be carried away or transferred, any merchandise displayed, held, stored or offered for sale by any store or other retail mercantile establishment with the intention of depriving the merchant of the possession, use or benefit of

such merchandise without paying the full retail value thereof;

18 Pa.C.S. § 3929(a)(1).

**§ 903. Criminal conspiracy**

**(a) Definition of conspiracy.**—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime.

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S. § 903(a)(1)-(2).

**§ 907. Possessing instruments of crime**

**(a) Criminal instruments generally.**—A person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally.

18 Pa.C.S. § 907(a).

In addition, we note our standard of review regarding challenges to the weight of the evidence:

The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the . . . verdict if it is so contrary to the evidence as to shock one's sense of justice.

> Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

***Commonwealth v. Devine***, 26 A.3d 1139, 1146 (Pa. Super. 2011) (citations omitted).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Wallace H. Bateman, Jr., we conclude Appellant's first issue merits no relief. The trial court opinion comprehensively discusses and properly disposes of the first question presented. ***See*** Trial Ct. Op. at 5-12 (finding evidence sufficient to support Appellant's convictions where trial testimony and video surveillance established that Appellant helped two other men abscond from a department store with stolen clothing by taking such clothing to a dressing room, helping to remove security devices with wire cutters, renting and driving a "get-away" van, fleeing when confronted by police, and abandoning the van in an unrelated residential drive-way). Further, the trial court found that Appellant's convictions were not against the weight of the evidence where the verdict was clearly "not erroneous." ***Id.*** We agree. As aptly noted by the trial court, significant evidence supported Appellant's convictions. ***Id.*** Thus, the verdict certainly did not shock one's sense of justice and Appellant's second issue also lacks merit. ***See Devine***, 26 A.3d at 1146. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.'

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/7/2016

IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | CP-09-CR-0000754-2015 |
| | : | |
| v. | : | |
| | : | |
| MARK NORTON | : | |

# OPINION

Defendant Mark Norton (hereinafter "Appellant") appeals this Court's October 28, 2015

Order Denying Post-Sentence Motions. We file this Opinion pursuant to Pennsylvania Rule of

Appellate Procedure 1925(a).

## PROCEDURAL HISTORY

Appellant was arrested by Bensalem Township Police on October 21, 2014. After a trial

held between June 10, 2015 and June 11, 2015, a jury found Appellant guilty of the offenses of

Retail Theft[1], Criminal Conspiracy[2], and Possession of an Instrument of Crime[3]. After

sentencing was deferred until August 13, 2015, this Court sentenced Appellant to serve not less

than fifteen (15) months, nor more than sixty (60) months, in a state correctional institution.

Appellant filed Post-Sentence Motions on August 17, 2015, which were denied on October 28,

2015. Appellant then filed a timely Notice of Appeal to Superior Court on November 4, 2015.

## FACTUAL BACKGROUND

The Commonwealth began its case-in-chief by presenting the testimony of Frank

Dicicco. Mr. Dicicco is the Director of Investigation of Internal Theft at Macy's in Bensalem

Township, Bucks County. Mr Dicicco was working in the camera room monitoring the store via

---

[1] 18 Pa.C.S. §3929(a)(1).
[2] 18 Pa.C.S. §903(c).
[3] 18 Pa.C.S. §907(a).

1



closed-circuit television on the evening of October 15, 2014 when he came to encounter Appellant. N.T. 06/11/15, pp. 32-35.

A store associate initially notified Mr. Dicicco of a man near the entrance of the mall who was acting in a suspicious manner. When Mr. Dicicco turned his attention toward that area of the store, he observed Appellant at the mall entrance talking on what appeared to be a cell phone while pacing back and forth into and out of the store, watching employees. N.T. 06/11/15, pp. 34-35. Appellant then met with another individual, Obdol Bailey, who seemed nervous and fidgety. After a brief conversation, Appellant returned to pacing while Mr. Bailey went to the men's department and began selecting articles of clothing. N.T. 06/11/15, pp. 35-36.

Specifically, Mr. Bailey selected numerous pairs of jeans without looking at prices or sizes and immediately took them to a nearby fitting room. Mr. Bailey was in the fitting room for approximately fifteen (15) to twenty (20) seconds before reemerging with nothing in his arms. N.T. 06/11/15, pp. 37-38. Mr. Dicicco observed that there was no one else in the fitting room at that time. At this point, Mr. Dicicco developed a belief that Appellant and Mr. Bailey were conducting what is known as a "hit and run," which occurs when subjects stage a large amount of merchandise in a fitting room to place it in bags or remove security tags, then leave the store quickly so security has little time to react. N.T. 06/11/15, p. 38.

During this time, Appellant continued to talk into what Mr. Dicicco eventually came to identify as a two-way Motorola walkie-talkie while pacing the men's department. Appellant met with Mr. Bailey near the Polo clothing once Mr. Bailey left the fitting room, and together they selected multiple articles of Polo brand clothing including four (4) of the same Polo jackets. N.T. 06/11/15, pp. 38-39. Appellant gave this clothing to Mr. Bailey, who entered the same fitting room as he used previously, and again reappeared after approximately one minute without any

clothing in his arms. Meanwhile, Appellant selected items from the Nautica section, then entered the fitting room himself and left after only fifteen (15) to twenty (20) seconds passed with no clothing in his arms. N.T. 06/11/15, pp. 39-40.

At this point, Appellant selected an Under Armour hooded sweatshirt from a display, and while returning to the fitting room, Appellant approached a signage cart near an aisle that was used by employees to change advertising signs. Appellant removed a Macy's shopping bag that was filled with garbage, and together with the sweatshirt, went back into the fitting room and reemerged with nothing. N.T. 06/11/15, pp. 40-41. Mr. Bailey then went into the fitting room as Mr. Dicicco contacted the police. N.T. 06/11/15, p. 41.

Meanwhile, Appellant stood by the Polo doors while still holding the walkie-talkie to his ear. Mr. Bailey and another individual, Lamar Alston, then exited the fitting room while carrying a Macy's bag overflowing with clothing. N.T. 06/11/15, p. 42. After the suspects left the store, Mr. Dicicco went into the fitting room, which was empty except for one stall that contained numerous hangars, a pile of trash with signing paperwork on the floor, and several damaged security tags that appeared to have been cut off of the clothing using some sort of tool. N.T. 06/11/15, pp. 44-46. A video tape of surveillance of these events was produced in evidence and played for the jury. See Exhibit C-1; N.T. 06/11/15, pp. 49-79.

When the men fled the Macy's store, police officers from Bensalem Township Police Department were waiting in the parking lot after having responded to Mr. Dicicco's call. N.T. 06/11/15, p. 98. Officer Marshall pursued two men carrying a large Macy's bag to a white work van in the parking lot. Upon hearing the van sound like it was preparing to drive away, the Officer ran to the driver's door and attempted to open it. However, the van pulled away before he could open the door and before the one suspect, who was later found to be Mr. Alston, could

3

enter the passenger's side door. N.T. 06/11/15, pp. 99-100. Officers then pursued Mr. Alston, who had dropped the Macy's bag in the parking lot prior to fleeing, and apprehended him in a nearby cemetery. Officers were able to recover wire-cutters and a walkie-talkie on Mr. Alston's person at that time. N.T. 06/11/15, pp. 102-03. Mr. Dicicco recovered much of the clothing he observed Appellant and Mr. Bailey selecting in the store from the bag that Mr. Alston had dropped in the parking lot, yet several of the items had ink stains and holes where the security devices were removed. This clothing was valued at approximately twelve hundred dollars ($1,200). N.T. 06/11/15, pp. 47-48.

Upon further investigation, officers recovered the white van in a local residential driveway. The license plate of the van matched the number that was observed on the van in the Macy's parking lot, and it was also observed that the passenger's side door of the van was in a partially open state. N.T. 06/11/15, pp. 103-04. Detectives further investigated the van, uncovering that it was a rental van from Enterprise that was listed under Appellant's name. Additionally, detectives found a large black duffle bag in the van that contained numerous receipts featuring Appellant's name and credit card number, two (2) walkie-talkies, as well as an opened pack of three (3) wire cutters with one missing from the pack. N.T. 06/11/15, pp. 114-20.

Appellant testified that he was at Macy's with Mr. Alston, his brother, and Mr. Bailey, his cousin's father in order to buy Mr. Alston and his cousin[4] clothes for their birthdays. N.T. 06/11/15, pp. 132-33. Appellant confirmed that he rented a van and drove himself and the two (2) men to Macy's. Appellant testified that they each picked out clothes and he picked out some clothes for them before being asked over the phone to bring the clothes and a bag to the fitting room. N.T. 06/11/15, pp. 134-36. Appellant claims that he was waiting by the register when Mr. Alston called to inform him that they had left the store. Appellant went to his van, but then he

---

[4] Appellant testified that his cousin was a thirteen (13) year old girl. N.T. 06/11/15, p. 133.

4

saw Mr. Alston "run out the store . . . being chased by a cop," and he left before Mr. Alston could get in the van. N.T. 06/11/15, pp. 139-40. Appellant further claims that while leaving Macy's, he "ran something over," so he parked the van in a residential driveway so that he could later fix the van or call a tow truck. N.T. 06/11/15, p. 141.

Based upon the above evidence, the jury returned a guilty verdict on one count of Retail Theft, one count of Criminal Conspiracy, and one count of Possession of an Instrument of Crime.

## MATTERS COMPLAINED OF ON APPEAL

On November 20, 2015, this Court issued an Order pursuant to Pa.R.A.P. 1925(b) directing Appellant to file a Concise Statement of Matters Complained of on Appeal. On December 2, 2015, Appellant filed his Concise Statement, which raised the following issues, *verbatim*:

1. The verdicts were against the weight of the evidence, as there was no physical evidence linking defendant to these crimes; to the contrary, the physical evidence exculpated him. Indeed, Norton was never seen leaving the store with any property. There was no evidence that Norton ever possessed an instrument of crime.

2. For similar reasons, the evidence was insufficient to support the verdicts of guilty.

## ANALYSIS

### I.     Sufficiency of the Evidence

Appellant contends that the evidence presented at trial was not sufficient to sustain the jury's verdict. We demonstrate herein that the Commonwealth presented sufficient evidence to the jury to prove beyond a reasonable doubt that Appellant committed the crimes of which he was convicted.

The Pennsylvania Supreme Court has articulated that the well-settled standard of review in judging the sufficiency of the evidence is whether, when viewing the evidence in a light most

5

favorable to the Commonwealth as the verdict winner and drawing the proper inferences favorable to the Commonwealth, the trier of fact could reasonably have found that all of the elements of the crime were established beyond a reasonable doubt. Commonwealth v. Hagan, 654 A.2d 541, 543 (Pa. 1995); Commonwealth v. Heberling, 678 A.2d 794, 795 (Pa. Super. 1996). The Superior Court has elaborated:

> In applying [the above] test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.

> The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Commonwealth v. Ventrini, 734 A.2d 404, 406-07 (Pa. Super. 1999) (internal citations omitted). Clearly, in finding Appellant guilty of one count each of Retail Theft, Criminal Conspiracy, and Possession of an Instrument of Crime, the jury believed the testimony of the Commonwealth's witnesses and accepted the Commonwealth's evidence to the extent it established beyond a reasonable doubt the elements of these offenses. Based on the foregoing facts and in viewing the facts most favorable to the Commonwealth, it is apparent that the Commonwealth presented sufficient evidence to the jury to prove beyond a reasonable doubt that Appellant committed the offenses.

### A. Retail Theft

Pursuant to 18 Pa.C.S.A. 3929(a), a person is guilty of Retail Theft if he:

takes possession of, carries away, transfers or causes to be carried away or transferred, any merchandise displayed, held, stored or offered for sale by any

6

store or other retail mercantile establishment with the intention of depriving the merchant of the possession, use or benefit of such merchandise without paying the full retail value thereof.

Appellant's argument seems to suggest that he is not guilty because he did not take or carry away the merchandise with the intent of depriving Macy's of the full retail value. However, Appellant ignores the accomplice liability and conspiracy which pertain to his action. "A person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable, or both." 18 Pa.C.S.A. 306(a). "A person is legally accountable for the conduct of another person when . . . he is an accomplice of such other person in the commission of the offense." 18 Pa.C.S.A. 306(b)(3). "A person is an accomplice of another person in the commission of an offense if . . . with the intent of promoting or facilitating the commission of the offense, he . . . aids or agrees or attempts to aid such other person in planning or committing it." 18 Pa.C.S.A. 306(c)(1)(ii). In addition, where there is a criminal conspiracy, as is discussed in further detail below, it is well-settled that "[e]ven if [a] conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators in furtherance of the conspiracy." Commonwealth v. Knox, 50 A.3d 749, 755 (Pa. Super. 2012), citing Commonwealth v. McCall, 911 A.2d 992, 996-97 (Pa. Super. 2006).

The evidence introduced at trial was sufficient to show that together with Mr. Bailey and Mr. Alston, Appellant committed the crime of Retail Theft. Testimony presented by Mr. Dicicco and the video surveillance tape played in its entirety confirm that over a forty (40) minute period, Appellant was likely in communication with the two (2) other men through the use of a two-way Motorola walkie-talkie that he constantly held to his ear. See Exhibit C-1; N.T. 06/11/15, pp. 49-79. The evidence also showed that Appellant and Mr. Bailey selected various articles of clothing from the men's department and deposited them in a fitting room. N.T. 06/11/15, pp. 35-36, 39-

7

Mr. Bailey and Mr. Alston then left the fitting room, with Mr. Alston wearing one of the Polo jackets that Appellant selected and carrying a large amount of clothing in a Macy's bag that Appellant previously removed from an employee signage cart and placed in the fitting room. N.T. 06/11/15, pp. 40, 42-43. Mr. Alston removed the items from the store without paying and attempted to make his way to a white van that was rented by Appellant. N.T. 06/11/15, pp. 43-44. Once the bag was recovered by Mr. Dicicco, he observed that it contained much of the merchandise that Appellant and Mr. Bailey earlier selected from the displays, and many of the items were now damaged after the security devices were forcibly removed. N.T. 06/11/15, pp. 46-48.

As Appellant aided Mr. Bailey and Mr. Alston in moving clothing to the fitting room, damaging articles by forcibly removing any security devices, placing the remains in a large Macy's bag, and removing the clothing from the store without paying, the evidence was sufficient for a jury to find that Appellant committed Retail Theft.

## B. Criminal Conspiracy

Appellant has also challenged his conviction for Criminal Conspiracy. A person is guilty of conspiracy if:

> . . . with the intent of promoting or facilitating the commission of a crime, he (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. 903(a). In other words, in order to find Appellant guilty of conspiracy, the following elements must be proven beyond a reasonable doubt: "(1) an intent to commit or aid in an unlawful act, (2) an agreement with a co-conspirator and (3) an overt act in furtherance of the conspiracy." Commonwealth v. Galindes, 786 A.2d 1004, 1010 (Pa. Super. 2001), citing

8

Commonwealth v. Spotz, 756 A.2d 1139, 1162 (Pa. 2000). "Because it is difficult to prove an explicit or formal agreement to commit an unlawful act, such an act may be proved inferentially by circumstantial evidence, i.e., the relations, conduct or circumstances of the parties or overt acts on the part of the co-conspirators." Knox, supra, 50 A.3d at 755 (internal citation omitted).

The evidence in the light most favorable to the Commonwealth was sufficient to support the jury's finding that Appellant was involved in a conspiracy. The jury heard testimony establishing that Appellant constantly met with Mr. Bailey over a period of approximately forty (40) minutes where he aided in selecting clothing that was taken en masse to a fitting room. N.T. 06/11/15, pp. 35-36, 39-40. The jury then heard testimony and witnessed video of Mr. Bailey and Mr. Alston flee the dressing room with merchandise in a large bag that Appellant had previously acquired and placed in that same fitting room area. See Exhibit C-1; N.T. 06/11/15, pp. 40, 42-43. When Mr. Alston was being apprehended by police outside of Macy's, he dropped the bag that was found to contain much of the clothing that Appellant had been seen on camera removing from Macy's displays. N.T. 06/11/15, pp. 46-47, 91.

Additionally, Appellant was seen on surveillance talking into a walkie-talkie radio for near the entirety of his time in Macy's. N.T. 06/11/15, pp. 35-42. A similar walkie-talkie was recovered from Mr. Alston when he was apprehended fleeing the store. N.T. 06/11/15, p. 103. Additionally, while Mr. Alston attempted to escape from the police, he ran towards a van that was rented in Appellant's name. N.T. 06/11/15, pp. 113-14. Within this van, a duffle bag was recovered that contained Appellant's receipts, two walkie-talkies, and an opened pack of three (3) wire cutters where one was missing. N.T. 06/11/15, pp. 114-19. In a related discovery, a pair of wire-cutters was found on Mr. Alston's person along with the previously mentioned walkie-talkie. N.T. 06/11/15, p. 103. When viewed in the aggregate, the evidence overwhelmingly

9

supports the notion that Appellant intended to aid in the theft from Macy's, agreed with both Mr. Bailey and Mr. Alston to so aid in this attempt, and committed overt acts in furtherance of the conspiracy by renting the van, helping to select the merchandise that was later stolen, and providing the bag used in the theft. As such, the evidence was sufficient to support that Appellant committed the crime of Criminal Conspiracy.

### C. Possession of an Instrument of Crime

A person commits the crime of possession of an instrument of crime when "he possesses any instrument of crime with intent to employ it criminally." 18 Pa.C.S.A 907. Specifically, an "instrument of crime" is defined as "anything specially made or specially adapted for criminal use' or 'anything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have." Id. The Commonwealth must prove each element of the offense, "including criminal intent, beyond a reasonable doubt.... Although criminal intent can be inferred beyond a reasonable doubt from the surrounding circumstances, it cannot be inferred from mere possession." Commonwealth v. Foster, 651 A.2d 163, 165 (Pa. Super. 1994).

There was sufficient evidence presented that Appellant possessed an instrument of crime by using the walkie-talkie to aid in the commission of the theft. For nearly the entire duration that Appellant was in the Macy's, he was speaking with someone on a walkie-talkie that he constantly held to his ear. N.T. 06/11/15, pp. 35-42. When Mr. Alston was apprehended after fleeing the Macy's with the stolen merchandise, a walkie-talkie was found on his person. N.T. 06/11/15, p. 103. Moreover, when Appellant's van was located after the theft, two walkie-talkies were recovered from a duffle bag that also contained Appellant's receipts and pairs of wire-cutters. N.T. 06/11/15, p. 114. Given the circumstantial evidence surrounding Appellant's time in

10

the Macy's, the jury could have found that Appellant was using the walkie-talkie to communicate with his co-conspirators during the commission of the theft. As such, the evidence was sufficient in the light most favorable to the Commonwealth to show that Appellant intended to use the walkie-talkie for a criminal purpose, namely to commit retail theft from Macy's.

Furthermore, the evidence was likewise sufficient to show that Appellant possessed a pair of wire-cutters through being a member of the conspiracy. Specifically, Mr. Alston and Mr. Bailey were in the fitting room with the selected merchandise prior to Mr. Alston leaving the store with a bag of clothes that were later found to have ink damage and holes from where security tags were forcibly removed. N.T. 06/11/15, pp. 42-43, 47-48. When Mr. Alston was apprehended, a pair of wire-cutters were found on his person, and a pile of damaged security tags that appeared to have been physically cut off clothing using some sort of tool were located in the fitting room from where he left. N.T. 06/11/15, pp. 45, 103. Considering these circumstances together, the evidence strongly points to Mr. Alston using the wire-cutters to remove the security devices attached to the clothing prior to leaving the store without paying for that clothing. As such, the wire-cutters were used for the criminal purpose of aiding in the commission of the theft, and it is clear that in so using them, Mr. Alston did so with the intent to commit that crime. As Appellant engaged in this conspiracy, he is similarly responsible for the offense as if he had brandished the wire-cutters himself. The evidence in light of the Commonwealth was therefore sufficient to find that Appellant possessed an instrument of crime.

**CONCLUSION**

For the foregoing reasons, this Court perceives that the issues of which Appellant has complained in this appeal are without merit, and that this Court's October 28, 2015 Order

Denying Post-Sentence Motions was supported by both the law and the record in this case. We respectfully request the Superior Court to affirm this Court's decision.

BY THE COURT:

February 29, 2016
Date

WALLACE H. BATEMAN, JR. J.

Copies to:


John J. Fioravanti, Jr., Esquire
93 East Court Street
Doylestown, PA 18901


Matt Lannetti, Esquire
Office of the District Attorney
Bucks County Courthouse
55 East Court Street
Doylestown, PA 18901