J. S12042/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :     IN THE SUPERIOR COURT OF
                                                  :           PENNSYLVANIA
                   v.                  :
                                                  :
SHAWN ADRIAN WALKER,            :           No. 1094 MDA 2017
                                                  :
                 Appellant          :


Appeal from the Judgment of Sentence, April 14, 2017,
in the Court of Common Pleas of Dauphin County
Criminal Division at No. CP-22-CR-0004951-2015


BEFORE:  LAZARUS, J., KUNSELMAN, J., AND FORD ELLIOTT, P.J.E.


MEMORANDUM BY FORD ELLIOTT, P.J.E.:         **FILED APRIL 10, 2018**

Shawn Adrian Walker appeals from the April 14, 2017 judgment of

sentence entered in the Court of Common Pleas of Dauphin County following

his conviction in a jury trial of one count each of criminal homicide – third-

degree murder; possession of a firearm prohibited; and firearms not to be

carried without a license.[1]   The trial court sentenced appellant to an

aggregate term of incarceration of 18 to 36 years.  We affirm.

The trial court set forth the following factual history of this case as

gleaned from the trial transcript:

> [O]n the night of July 11, 2015 into the morning
> hours of July 12, 2015, Shawn Walker ("[a]ppellant")
> shot and killed Eric Rivers ("[v]ictim").
> Officer Christopher Auletta, of the Harrisburg City
> Police, received a call from dispatch that shots were

---

[1] 18 Pa.C.S.A. §§ 2501(a), 6105(a)(1), and 6106(a)(1), respectively.

fired on or near Crescent Street, Harrisburg[,] Pennsylvania. When Officer Auletta arrived on the scene, he saw a man (later identified as the victim) lying on a porch, not breathing with an injury to the front of his chest. There were no weapons on or near the victim. Through Officer Auletta, the Commonwealth introduced a photograph of the victim on the porch after EMS assessed him.

Doctor Wayne Kenneth Ross, an expert in forensic pathology, performed the autopsy on the victim on July 14, 2015. The autopsy revealed three gunshot wounds to the left side of the chest, a gunshot wound to the right shoulder, and an abrasion/scrape around one of the knees. There was no indication that the victim grabbed the gun as there were no cuts, bruises, abrasions, etc. on the victim. Dr. Ross also described how the bullets entered the victim. The three gunshots to the chest were close range shots (i.e. the gun was touching the clothing). The shoulder shot occurred from two to three feet away. The BAC of the victim was .22. William Henry Kimmick, III ("Investigator Kimmick"), a forensic investigator with the Harrisburg City Police, processed the crime scene. Through him, the Commonwealth introduced Commonwealth's Exhibits one through twenty which depicted the crime scene. Investigator Kimmick testified that when he processed the scene he found what appeared to be a .22 caliber bullet. When a search warrant was conducted at [a]ppellant's residence, some .22 caliber ammunition was also found. A stipulation was entered in which the unspent bullets found at [a]ppellant's residence were consistent (with respect to caliber, bullet type, configuration, and brass plating) as those found left at the scene. Investigator Kimmick also testified to the distance (280 feet) between [a]ppellant's home at 1160 Berry Hill Street, Harrisburg, PA and where the victim was found at 450 Crescent Street, Harrisburg, PA. Finally, Investigator Kimmick testified that he received a paper from a neighbor, Ida Gaines, who said she saw the whole thing but did not want to be seen talking to police.

Ida Gaines, a neighbor who lives at 462 Crescent Street, testified that there was a fight between the victim and four other females ([appellant's] daughters). One of the daughters, Aquaris [sic], yelled "I'll go get my dad."[Footnote 6] Ms. Gaines testified that the daughters left to go get their father and the victim was standing on a front porch. Ms. Gaines saw [a]ppellant pull a gun and shoot the victim three times. She further testified that the victim told [a]ppellant "You don't have to do this" prior to the shots being fired. Also, prior to the shooting, the victim told [a]ppellant that he hit his daughter because the daughter spit on the victim. Ms. Gaines never saw the victim with a gun nor any weapons.[Footnote 7] Dwayne A. Simon[Footnote 8], a resident at 450 Crescent Street, also testified to the events that occurred. Mr. Simon saw one of the daughters spit on the victim, throw a drink on the victim, and then her [sic], along with her sisters, jump on the victim and star[t] hitting him. Mr. Simon testified that the victim had no weapon and that [a]ppellant just kept shooting despite the victim stating "I didn't touch your daughter." Mr. Simon also testified that while [the victim] fell backwards there was an additional shot.[Footnote 9]

> [Footnote 6] Acquaries [sic] is a daughter to [a]ppellant.
>
> [Footnote 7] Ms. Gaines has a charge of false identification that is still pending.
>
> [Footnote 8] Mr. Simon is the victim's cousin.
>
> [Footnote 9] Mr. Simon also testified that he gave a different statement to police than what he testified [to] because he wanted to get and kill [a]ppellant.

Roderick McArthur, a resident at 452 Crescent Street, also testified to the interaction between Shayla ([a]ppellant's daughter) and the victim.

Mr. McArthur testified that a drink was thrown in the victim's face, someone spit in the victim's face, and that the daughters ganged up on the victim. Mr. McArthur testified that the victim tried to walk away from the situation. Mr. McArthur described the shooting and noted that he did not see any weapons on the victim and that the victim was acting calm. The Commonwealth introduced the testimony of Kanishia Kirkland who also testified to the events of July, 2015. Ms. Kirkland testified that she along with [a]ppellant went to York, Pennsylvania immediately following the incident. Detective Jason Paul, employed by the Harrisburg City Police, testified that [a]ppellant was located in Creedmoor, North Carolina and does not have a valid license to possess a firearm. Detective Paul also identified [a]ppellant.

Shayla Walker, a daughter of [a]ppellant, testified for the defense. Shayla testified that the victim was touching her butt and thighs in a sexual manner. Shayla threw a drink in the victim's face and the victim punched her several times. On cross-examination, Shayla testified that no one ever called 911, they got in a car and fled. Additionally, Shayla never called police to tell them what happened. Shantay Walker, a daughter of [a]ppellant, also testified that she went and got her father ([a]ppellant). She also testified that no one called 911 nor talked to the police. And that when Shayla and her father came around the corner, the victim and Tatiana ([a]ppellant's daughter) were not together and [a]ppellant asked what was going on. Appellant also testified and indicated that he had no knowledge of who it was [that was messing with his daughters] or whether they had a weapon. [Appellant] also testified that it was the victim who lunged and tried to grab him. On cross-examination, [appellant] admitted to leaving the house with a gun and leaving the house without calling the police. Additionally, [appellant] admitted that he did not give a warning to the victim prior to shooting.

Trial court opinion, 8/15/17 at 2-5 (citations to notes of testimony omitted; some brackets in original).

The record reflects that following appellant's convictions, appellant filed a post-sentence motion, which the trial court subsequently denied. Appellant then filed a timely notice of appeal to this court. The trial court ordered appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant timely complied. Thereafter, the trial court filed its Pa.R.A.P. 1925(a) opinion.

Appellant raises the following issue for our review:

> Did not the [trial] court abuse its discretion by failing to grant [appellant] a new trial on the basis that the guilty verdict was against the weight of the evidence when the totality of the evidence as to the issues of self-defense, imperfect self-defense, and killing in the heat of passion was unreliable, contradictory, and incredible?

Appellant's brief at 5 (capitalization omitted).

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (citations omitted; emphasis omitted).

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the . . . verdict if it is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Devine*, 26 A.3d 1139, 1146 (Pa.Super. 2011).

Here, appellant contends that "[a]lthough there were many disputed circumstances at trial, it is reasonable to conclude that there was no dispute regarding [certain aspects] of [appellant's] state of mind and actions." (Appellant's brief at 32.) Appellant then asks this court to "discount[] the bias[ed] testimony of [appellant's] best friend and cousin." (*Id.* at 33.) Appellant further maintains that "the credibility of [certain Commonwealth witnesses] was undermined by substantial, indisputable evidence of record" and that "[m]ost of the Commonwealth witnesses gave inconsistent statements to the police regarding the key issues in the case." (*Id.* at 34.)

In so doing, appellant invites this court to assess witness credibility and reweigh the evidence. "The jury, as fact-finder[, however,] had the duty to determine the credibility of the testimony and evidence presented at trial." *Commonwealth v. Talbert*, 129 A.3d 536, 546 (Pa.Super. 2016). (citation omitted). Appellate courts cannot and do not substitute their judgment for that of the fact-finder. *See id.* Here, a jury of appellant's

peers weighed the evidence and assessed the credibility of the witnesses and determined that the Commonwealth's evidence proved beyond a reasonable doubt that appellant committed third-degree murder. After carefully reviewing the record, we conclude that the jury's verdict was not so contrary to the evidence so as to shock one's sense of justice. Rather, our review of the record supports our conclusion that the trial court properly exercised its discretion in denying appellant's weight of the evidence claim.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/10/2018