J-A11011-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| THOMAS RICE | |
| Appellant | No. 1162 MDA 2017 |

Appeal from the Judgment of Sentence entered April 19, 2017
In the Court of Common Pleas of Dauphin County
Criminal Division at No: CP-22-CR-0001601-2016

BEFORE:  STABILE, J., NICHOLS, J., and PLATT, J.[*]

MEMORANDUM BY STABILE, J.:                    **FILED AUGUST 14, 2018**

Appellant, Thomas Rice, appeals from the April 19, 2017 judgment of sentence entered in the Court of Common Pleas of Dauphin County following his conviction of possession with intent to deliver ("PWID"), conspiracy, and related offenses.  Appellant claims the evidence was insufficient to prove the offenses, asserts trial court error for admitting evidence of a prior drug sale, and alleges an assistant district attorney committed prosecutorial misconduct.  Following review, we affirm.

The trial court summarized the facts of this case as follows:

> On August 15, 2015, officers from the City of Harrisburg Police Department ("HPD") responded to a report of a shooting at 1249 Market Street—an apartment building wherein Keyonda

---

* Retired Senior Judge assigned to the Superior Court.

Brown and her sister, Janeisha Chambers, rented a three (3) bedroom apartment on the third floor. [Appellant] was in an intimate relationship with Ms. Brown and stayed with her in the apartment on and off for approximately six (6) months and had moved some personal items, such as a safe and a bin of clothing, into the residence a week before the incident. Karen Lyda, a forensic investigator, Dennis Simmons, a detective, and Christopher Thomas, a patrol officer, responded to the call and testified during trial.

When Detective Simmons arrived on scene he was advised that a male victim was shot multiple times and transported to Hershey Medical Center. He observed a trail of blood on the south side of the apartment building, and followed it up the fire escape into apartment number 2. Once in the apartment, he conducted a preliminary walk through, and then returned to the police station to interview the two (2) witnesses—Ms. Brown and Ms. Chambers.

Ms. Brown advised Detective Simmons that she was out of the residence from approximately 10:00 P.M. until 2:00 A.M. the night of the shooting. Ms. Brown took a shower when she returned home, and upon exiting from the shower heard multiple gunshots. A few minutes later, she exited the residence through the back door and observed [Appellant] laying [*sic*] in a pool of blood on the second floor fire escape. Ms. Brown advised Detective Simmons that she also observed two (2) dark-skinned black males in the area, and heard [Appellant] tell one of the males to take the stuff out of his pocket. Thereafter, she rendered aid to [Appellant] and called 9-1-1.

Due to observing some illegal items in plain view within the residence, Ms. Brown was Mirandized before Detective Simmons asked whether there were other illegal items in the residence. She advised that she had a gun clip and safe in her bedroom, the pink room. She further advised Detective Simmons would find drugs and guns in the safe.

Once Detective Simmons obtained a search warrant, he returned to the residence where he was stopped by Officer Thomas. Officer Thomas advised Detective Simmons that he met with a female residen[t] of the apartment building, Freida Montague, who stated that shortly after the shooting a dark-skinned female wearing a bloody shirt knocked on her door and asked to hold her pink purse. Ms. Montague hung the purse on

the back of her door and did not open it. Ms. Brown testified that she took an empty PCP vial from the TV stand in her bedroom, put it in the purse, and took the purse to her neighbor. She denies that it was her PCP, and only took it to her neighbor because she was scared. After retrieving the purse from Ms. Montague, investigator Lyda opened and photographed the inside of the purse. A glass vial covered in blood with a black lid containing suspected PCP was inside, as well as multiple mint leaves and other personal items.

Execution of the search warrant revealed several items. In the kitchen officers discovered multiple mint leaves in a large Tupperware container in the kitchen sink. In Ms. Brown's room, also referred to as "the pink" room, were: (1) a large safe covered with male clothing; (2) a plastic bin with multiple items of male clothing in addition to a black .40 caliber Taurus handgun; (3) small bag of suspected marijuana; (4) a pipe commonly used to smoke marijuana; (5) several blue, oblong tablets; (6) a box of plastic sandwich bags; (7) an empty glass jar with a blue lid; (8) a white purse with an empty black glass vial, similar to others found, with tobacco leaves throughout; and (9) a male wallet with [Appellant's] New Jersey identification card inside. The safe was approximately three (3) feet high, weighed over one hundred (100) pounds, and required at least two individuals to pick up and move. Inside the safe were seven (7) individual glass jars with black lids containing suspected PCP, $1,180 of United States currency in various denominations, several batteries, and a sock. Officers also located a .22 caliber magazine in an unoccupied bedroom of the residence.

Trial Court Opinion, 11/2/17 ("TCO"), at 5-6 (references to notes of testimony and footnotes omitted).[1]

_____

[1] The omitted footnotes indicated that the handgun's magazine was fully loaded and there was a round in the chamber, ready for fire; that the suspected marijuana and suspected PCP were subsequently tested and confirmed to be marijuana and liquid PCP with approximately one ounce of PCP per vial; and that a sock is a common way to transport individual jars of PCP to avoid skin contact.

Appellant was arrested and charged with PWID, conspiracy—PWID, tampering with/fabricating physical evidence, and possession of drug paraphernalia.[2] Following a December 2016 trial, the jury convicted Appellant of PWID, conspiracy, and possession of drug paraphernalia, but acquitted him of tampering with evidence. The trial court sentenced Appellant to an aggregate term of not less than fifty-seven nor more than one hundred fourteen months of confinement in a state correctional institution, and five years' probation consecutive to the confinement. TCO at 1-2.

By order entered June 26, 2017, the trial court denied Appellant's post-sentence motions. This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925. Appellant now asks this Court to consider the following issues on appeal:

    A. Was the evidence sufficient to prove possession with intent to deliver?

    B. Was the evidence sufficient to prove criminal conspiracy to commit possession with intent to deliver?

    C. Did the court err when it admitted evidence of Appellant's prior drug sales as evidence under Pa.R.E. 404(b)?

    D. Did the Assistant District Attorney commit prosecutorial misconduct when it [sic] proceeded at trial on charges that were withdrawn at the preliminary hearing?

---

[2] 35 P.S. § 780-113(a)(30), 18 Pa.C.S.A. § 903, 18 Pa.C.S.A. § 4910(1), and 35 P.S. 780-113(a)(32), respectively. Additional charges of person not to possess firearm and receiving stolen property were withdrawn by the Commonwealth.

Appellant's Brief at 3.

Appellant's first two issues challenge the sufficiency of evidence supporting his convictions of PWID and conspiracy.[3] This Court has explained:

> Our standard and scope of review for sufficiency challenges are well established.
>
> > We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.
> >
> > The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. Additionally, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered.

*Commonwealth v. Feliciano*, 67 A.3d 19, 23-24 (Pa. Super. 2013) (*en banc*) (citations omitted), *appeal denied*, 81 A.3d 75 (Pa. 2013).

---

[3] Ms. Chambers and Ms. Brown were charged as co-conspirators with Appellant.

In accord with 35 P.S. §780-113(a)(30), a person not registered under the Act is prohibited from the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance. Appellant contends that a finding of PWID requires proof, beyond a reasonable doubt, that he constructively possessed an illegal substance, *i.e.*, that he had "1) the [] ability to exercise a conscious dominion over the illegal substance; 2) the [] power to control the illegal substance; and 3) the [] intent to exercise that control." Appellant's Brief at 15 (quoting **Commonwealth v. Johnson**, 26 A.3d 1078, 1086 (Pa. 2011)). He argues that the evidence failed to establish his constructive possession of the PCP found in Ms. Brown's room.

The trial court dismissed Appellant's constructive possession argument, noting:

> Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

TCO at 8 (quoting **Commonwealth v. Hopkins**, 67 A.3d 817, 820 (Pa. Super. 2013) (citations omitted)). "Additionally, it is possible for two people to have joint constructive possession of an item of contraband." **Hopkins**, 67 A.3d at 820-21 (citation omitted).

Appellant suggests that the evidence cannot support a conviction for PWID. In support of his contention, he makes reference to evidence presented

at trial.  Appellant's Brief at 15-17.  However, in doing so, he presents a view of the evidence in a light most favorable to Appellant.  Our standard of review requires otherwise, mandating that we view the evidence and reasonable inferences in the light most favorable to the Commonwealth as verdict winner.

The trial court explained:

> When viewed in their totality, the facts and circumstances support the finding that Appellant was in constructive possession of the contraband.  Seven (7) vials of PCP were found in the safe located inside the closet in Ms. Brown's bedroom.  Detective Simmons testified that there was a trail of blood leading to the closet where the safe was found, and that the safe was covered with male clothing.  Ms. Brown testified she and Appellant were in an intimate relationship, and that Appellant had stayed with her in her bedroom on and off for approximately six (6) months.
>
> While Ms. Brown did not observe Appellant place the safe and bin of clothing in her room, she assumed that he did as it was not there before he arrived to stay with her, and was in her bedroom when she returned home later that night.  She further testified that except for the safe and bin of clothing, everything else in the bedroom belonged to her.  Ms. Brown did not have access to items inside the safe, and did observe Appellant go in and out of the safe on one occasion.  Lastly, Detective Simmons recovered a wallet with Appellant's New Jersey identification card, as well as other personal items, on the floor of Ms. Brown's bedroom.  Accordingly, Appellant is not entitled to relief as the Commonwealth proved beyond a reasonable doubt that Appellant had possession of the contraband.

TCO at 8-9 (references to notes of testimony and footnote omitted).

We agree with the trial court's assessment.  Viewing the evidence and all reasonable inferences in the light most favorable to the Commonwealth, there was sufficient evidence for the jury to find Appellant had the ability to exercise conscious dominion over the PCP, the power to control it, and the

intent to exercise that control. Therefore, the evidence was sufficient to find Appellant guilty of PWID beyond a reasonable doubt. Appellant's first issue fails.

Appellant next argues that the evidence was insufficient to support his conspiracy conviction. Section 903 of the Crimes Code provides:

> **(a)** **Definition of conspiracy.**—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
>
> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
>
> (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903.

In **Feliciano**, this Court reiterated:

> "To sustain a conviction for criminal conspiracy, the Commonwealth must establish the defendant: 1) entered into an agreement to commit or aid in an unlawful act with another person or persons; 2) with a shared criminal intent; and 3) an overt act was done in furtherance of the conspiracy." **Commonwealth v. Devine**, 26 A.3d 1139, 1147 (Pa. Super. 2011). "The conduct of the parties and the circumstances surrounding such conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt." **Id.** The conspiratorial agreement "can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode." **Id.**

*Feliciano*, 67 A.3d at 25-26. As the Commonwealth suggests, agreements of conspiracy are "generally established via circumstantial evidence such as by 'the relations, conduct, or circumstances of the parties or overt acts on the part of co-conspirators' because it is difficult to prove an explicit agreement." Commonwealth Brief at 11 (quoting *Commonwealth v. Sanchez*, 82 A.3d 943, 973 (Pa. 2013)).

The trial court concluded the evidence, viewed in the light most favorable to the Commonwealth, was sufficient to sustain Appellant's conviction for conspiracy. As the court explained:

> Ms. Brown permitted Appellant to move an extremely heavy safe into her bedroom for the obvious purpose of storing contraband. Ms. Brown admitted that she was aware that there were drugs and money in the safe. Allowing the safe into the residence qualifies as an overt act. In addition, Ms. Brown retrieved the items from Appellant's person when he was shot, knowing that he possessed illegal items, and then took those items, put them into her purse, and took the purse to a neighbor in an effort to conceal the contraband. Likewise, Ms. Chambers admitted to smoking PCP on the day of the incident, and admitted that she obtained the PCP from Appellant. Therefore, Ms. Chambers was likewise aware, or should have been aware, that the safe brought into the residence by Appellant contained contraband.

TCO at 10.

The trial court concluded that the Commonwealth established the requisite elements of conspiracy, *i.e.*, that Appellant entered into an agreement to commit an unlawful act with another person, that they shared criminal intent, and that an overt act was done in furtherance of the conspiracy. Viewing the evidence in its totality and in the light most favorable

to the Commonwealth as verdict winner, we agree that the evidence was sufficient to sustain Appellant's conspiracy conviction. Appellant's second issue fails.

In his third issue, Appellant contends the trial court erred in allowing introduction of evidence that Appellant sold PCP to Ms. Chambers. As such, Appellant is challenging an evidentiary ruling. In **Commonwealth v. Page**, 965 A.2d 1212 (Pa. Super. 2009), this Court explained:

> Evidence relating to other crimes, wrongs, or acts of a defendant is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident" if the probative value outweighs the potential prejudice. Pa.R.E. 404(b)(2), (b)(3). When reviewing a claim concerning the admission of evidence, and specifically evidence of a prior bad act by a defendant, the appropriate standard was set forth in **Commonwealth v. Reid**, 571 Pa. 1, 811 A.2d 530, [550] (2002) (internal citations omitted) (emphasis added), as follows:
>
> > The admission of evidence is a matter vested within the sound discretion of the trial court, and such a decision shall be reversed only upon a showing that the trial court abused its discretion. In determining whether evidence should be admitted, the trial court must weigh the relevant and probative value of the evidence against the prejudicial impact of that evidence. Evidence is relevant if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact. Although a court may find that evidence is relevant, the court may nevertheless conclude that such evidence is inadmissible on account of its prejudicial impact.
> >
> > Evidence of prior bad acts committed by a defendant is not admissible solely to show the defendant's bad character or his propensity for committing bad acts. However, evidence of prior bad acts is admissible where there is a legitimate reason for the evidence, such as to establish: 1) motive; 2) intent; 3) absence of mistake or accident; 4) a common scheme or plan; and 5) identity. The evidence may also be

- 10 -

> admissible to impeach the credibility of a testifying defendant; to show that the defendant has used the prior bad acts to threaten the victim*; **and in situations where the bad acts were part of a chain or sequence of events that formed the history of the case and were part of its natural development.**

*Id.* at 1219 (emphasis added).

The trial court recounted that the prior bad acts issue was raised prior to the start of trial and that the prosecutor's intent was to "introduce everything that [the witnesses] know about that particular day just to give a flow of story for the jury, and so they understand exactly where these witnesses are coming from and their personal knowledge and perspective, and their relationship to [Appellant] as well." Notes of Testimony, 12/5/16, at 9. The Commonwealth agreed with the trial court's characterization, "for lack of a better term," as "a *res* [*gestae*] connection between the earlier testimony and the actual occurrence following the shooting." *Id.* The court ruled that the testimony would be limited to the purchase on the day before the incident, because "[i]t's clearly within the time frame. And they'll be able to say that they believe him to be a drug dealer." *Id.* at 11-12.

Appellant's counsel expressed concern about Ms. Chambers' statement that she heard Appellant carried a gun and that she knew him to carry a gun years earlier. When the prosecutor explained her intent was to "stick to the incident as much as possible," Appellant's counsel asked, "And what the court just limited you?" The prosecutor replied, "Yes," and Appellant's counsel stated, "Fair enough." *Id.* at 11.

The only testimony offered by Ms. Chambers about a purchase of PCP from Appellant was in reference to the purchase made "earlier in the day," referring to the day of the shooting.[4]  *Id.* at 136-37.  The trial court permitted the Commonwealth

> to introduce testimony of the drug sale which occurred the day prior to the incident in question as it demonstrates the basis, if not motive of the charged conspiracy.  The testimony . . . tends to prove that Ms. Chambers was aware that Appellant was a drug dealer and that she and Ms. Brown allowed Appellant to move an overly large, heavy safe into their residence knowing what was inside of it.  The sale was close in proximity to the incident, therefore clearly provides probative value that outweighs any unfair prejudice.

TCO at 12-13.

We agree that there was a legitimate basis for allowing the testimony. Finding no abuse of discretion in the trial court's ruling, we shall not disturb it.  Appellant's third issue does not provide any basis for relief.

In his fourth and final issue, Appellant contends the Assistant District Attorney committed prosecutorial misconduct by proceeding on a charge at trial that Appellant thought had been withdrawn.  Specifically, Appellant asserts misconduct "in withdrawing the charge of tampering with/fabricating evidence at the Magistrate District Court and later proceeding on the charge in violation of Appellant's due process rights; allowing the Commonwealth to

---

[4] The shooting actually occurred in the very early hours of the following morning.  While the sale to Ms. Chambers technically occurred the evening before, the events surrounding the sale and the shooting were treated generally by the parties as occurring on the same day.

present evidence of a firearm although Appellant was not charged with possession of a firearm." Appellant's Rule 1925(b) Statement, 10/17/17, at 2 (some capitalization omitted). However, in his brief, Appellant concedes that the Commonwealth did not remove the charge from the information, despite suggesting at the preliminary hearing that there was insufficient evidence for the charge. Appellants' Brief at 21.

The trial transcript reflects that the charges Appellant faced at trial included "tampering with physical evidence." Notes of Testimony, 12/5/16, at 5. At the conclusion of trial, the court delivered its instructions and informed the jury of the elements of each of the crimes charged, including "tampering or fabricating physical evidence." *Id.* at 327. At no time did Appellant object based on a belief the charge had been dropped. We find, as did the trial court, that Appellant's final issue is "a combination of incorrect and inaccurate facts." TCO, at 13. Appellant is not entitled to relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/14/18