J. S84045/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| SAM WALKER, | : | No. 2052 EDA 2018 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence Entered March 9, 2018,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0006309-2017

BEFORE:  BENDER, P.J.E., OTT, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED FEBRUARY 11, 2019**

Sam Walker appeals from the March 9, 2018 judgment of sentence entered in the Court of Common Pleas of Philadelphia County after a jury convicted him of second-degree murder, robbery, and conspiracy to commit robbery.[1]  The trial court imposed the mandatory life sentence for the murder conviction and imposed no further penalty on the robbery and conspiracy convictions.  We affirm.

The trial court set forth the following:

> On May 14, 2017, around 2:00 p.m. or 3:00 p.m., Deborah Leatherberry and her boyfriend, the victim, James Bolden,[Footnote 2] arrived at the home of Leatherberry's mother at 51st and Arch Streets in Philadelphia to celebrate Mother's Day.  Shortly thereafter, several of Leatherberry's sisters and their children arrived, including Leatherberry's sister

---
[1] 18 Pa.C.S.A. §§ 2502(b), 3701(a)(1)(i), and 903.

Starkeisha, and her boyfriend, [appellant]. A few hours later, while Leatherberry, Bolden, [appellant], and Leatherberry's nephew were sitting on the porch, Bolden took money from his pocket and asked Leatherberry to go to the store and buy him beer. Bolden had recently acquired several hundred dollars after his father died. Leatherberry went to the store on the next block, bought beer, and returned to her mother's house.

[Footnote 2] James Bolden was also known by the name "Storm."

A few hours later, Leatherberry, her nephew, her sister Priscilla, Bolden and [appellant] were sitting on the porch. While on the porch, [appellant] said something to Bolden, and Bolden took offense, asking [appellant]: "are you talking to me?" In order to diffuse the situation and prevent an altercation, Leatherberry suggested that they go back inside her mother's house. However, after everyone went inside, [appellant] punched Bolden while they were in the living room. In response, Bolden attempted to punch [appellant] but missed, and [appellant] again punched Bolden, causing him to fall to the ground. Bolden moved underneath a table in the living room, but [appellant] continued to hit and stomp on him. Eventually, Leatherberry threatened to call the police, but [appellant] stopped beating Bolden. Leatherberry still called the police, but [appellant] was gone before the police arrived at the house.

Sometime after the police left, around 9:45 p.m., Leatherberry and Bolden walked to 52nd and Market Streets so that they could take the Market-Frankford Line ("the El") to their home in Germantown. While the couple was standing in front of a pillar waiting for the El to arrive, [appellant] sprang out from behind the pillar and punched Bolden in the head, immediately causing Bolden and Leatherberry to fall to the ground. Meanwhile, another man who was with [appellant] approached the couple, now on the ground, from the other side of the pillar and reached

into Bolden's pocket to take the money that Bolden had recently acquired after his father's death. As the man stole Bolden's money, [appellant] continued to strike Bolden in the head. Then, [appellant] and the other man, who had a hoodie pulled over his face, ran away. While all of this occurred, Leatherberry was attempting to help her boyfriend and screaming for someone to call the police.

Shortly thereafter, Officers [Ashiq] Damani and [Kevin] Tilghman were the first officers to arrive on the scene. Leatherberry told the officers that [appellant] and another man[,] whom she could not recognize because of the hoodie obscuring his face, attacked Bolden. Bolden was bleeding from his mouth and face and had a difficult time standing. An ambulance arrived and transported Bolden to Lankenau Hospital. The next day, May 15, 2017, Bolden was pronounced dead. The medical examiner determined that Bolden's cause of death was head trauma.

Trial court opinion, 10/3/18 at 2-4 (record citations omitted).

The record reflects appellant filed a timely post-sentence motion which the trial court denied. Appellant then filed a timely notice of appeal. The trial court ordered appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Following the grant of an extension of time, appellant timely complied. The trial court thereafter filed its Rule 1925(a) opinion.

Appellant raises the following issue for our review: "Was the verdict against the weight of the evidence, and did the trial court abuse its discretion in so finding?" (Appellant's brief at 2.)

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question

> of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (citations omitted; emphasis omitted).

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the . . . verdict if it is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Devine*, 26 A.3d 1139, 1146 (Pa.Super. 2011).

Here, to bolster his weight challenge, appellant points out various instances of what he deems as evidentiary "inconsistencies." (Appellant's brief at 5-6.) For example, appellant contends that the verdict was against the weight of the evidence because the poor quality of the surveillance videotape from which a witness identified appellant rendered the identification unreliable. (*Id.* at 8-9.) In so contending, appellant claims that "[a]ll that can be determined from the testimony is that the height, build, facial hair and type of clothing were consistent with [appellant]," but

that [in no way, however, amounts to a reliable identification, notwithstanding [the witness's] firm belief." (*Id.* at 9.)

Appellant further contends that a statement made by Ms. Leatherberry was inconsistent with a statement made by the victim which "gives rise to questions regarding Ms. Leatherberry's motive to perhaps protect [her ex-boyfriend] at [appellant's] expense." (*Id.* at 10-11.) Appellant further attacks Ms. Leatherberry's credibility by pointing out that she had been drinking alcohol and smoking marijuana prior to the attack on the victim; that portions of her testimony were inconsistent with the testimony of her mother; and that Ms. Leatherberry contradicted herself. (*Id.* at 10-13.)

In so doing, appellant invites this court to assess witness credibility and reweigh the evidence. "The jury, as fact-finder[, however,] had the duty to determine the credibility of the testimony and evidence presented at trial." *Commonwealth v. Talbert*, 129 A.3d 536, 546 (Pa.Super. 2016) (citation omitted). Appellate courts cannot and do not substitute their judgment for that of the fact-finder. *See id.* Here, a jury of appellant's peers weighed the evidence and assessed the credibility of the witnesses and determined that the Commonwealth's evidence proved beyond a reasonable doubt that appellant committed second-degree murder, robbery, and conspiracy to commit robbery. After carefully reviewing the record, we conclude that the jury's verdict was not so contrary to the evidence so as to shock one's sense of justice. Rather, our review of the record supports our

conclusion that the trial court properly exercised its discretion in denying appellant's weight of the evidence claim.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/11/19