J. S66040/19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| KHALIF BAILEY-WILLIAMS, | : | No. 2774 EDA 2018 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence Entered August 17, 2018,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0010039-2017

BEFORE:  STABILE, J., NICHOLS, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED JANUARY 08, 2020**

Khalif Bailey-Williams appeals from the August 17, 2018 judgment of sentence entered in the Court of Common Pleas of Philadelphia County following his conviction in a jury trial of one count each of solicitation to commit involuntary deviate sexual intercourse, unlawful contact with minor, corruption of minors, and indecent assault – complainant less than 16 years of age.[1]  The trial court imposed an aggregate sentence of three to six years of incarceration.  We affirm.

The trial court set forth the following factual history:

> In or about 2017, complainant D.L. lived at her grandmother's home[.]  During this time, [appellant] also resided at [that home], along with D.L.'s grandmother, great-grandmother, aunt, and uncle.

---

[1] 18 Pa.C.S.A. §§ 902(a), 6318(a)(1), 6301(a)(1)(ii), and 3126(a)(8), respectively.

At all times relevant to this case, D.L. was approximately thirteen (13) years old. [Appellant] was a close family friend.

D.L. testified that one night she and [appellant] walked to a local pizza shop together. As they were walking to the pizza shop, [appellant] told D.L. that her aunt had previously performed oral sex on him in exchange for money. The conversation made D.L. uncomfortable. "It made me look at [my aunt] different. It made me look at [appellant] different, too." [Appellant] then stated that he "might come in [the house] drunk or high one night and ask [D.L.] to do something too." After this first incident, [appellant] began asking D.L. for sexual favors in exchange for money. D.L. testified that on several occasions [appellant] offered D.L. fifty dollars ($50) to touch her buttocks and breasts. On one other occasion, [appellant] offered D.L. one thousand dollars ($1,000) if she would allow him to perform oral sex on her. He did not ask D.L. these questions verbally if other family members were nearby. Instead, [appellant] created a message on his phone, typed out the explicit requests, and showed D.L. the message without sending it. When this happened D.L. shook her head "no" and walked away from [appellant]. During this time, [appellant] also began inappropriately touching D.L. D.L. recounted that on her birthday[, appellant] gave her a hug and rested his hand on her buttocks. On another occasion, [appellant] put his arm around D.L.'s shoulder to give her a side hug and touched her buttocks and thighs. This behavior happened over the course of several months and ended when [appellant] got into a relationship in the summer of 2017.

D.L. first told her friend F.T. what was happening between her and [appellant] during the summer of 2017 while D.L. was living with F.T. D.L. then disclosed to mother, [D.B.], on August 29, 2017. D.L.'s mother, [D.B.], testified that in the days leading up to the disclosure by D.L., she could tell something was bothering D.L. D.L. stated that she was "acting out" and getting into trouble, which prompted her

mother to ask D.L. what was causing the change in her behavior. On cross-examination, [D.B.] denied that D.L. was getting into trouble when she disclosed to her. Rather, she was just acting differently than normal. "Her behavior was always fine. She was acting like something was wrong. Like she was keeping something from me . . .[.] Like, she wasn't acting the [sic] normal [D.L.]."

Finally, D.L. came to her mother and confided that [appellant] had been offering her money for sex acts. [D.B.] said that D.L. seemed scared. She was "a little [shaken] up and she was crying." D.L.'s mother was surprised and upset at [appellant's] behavior. "She was surprised because he'd been so close to us for a long time . . . she [was mad.]" [D.B.] immediately called D.L.'s grandmother and drove to [D.L.'s grandmother's home]. D.L.'s grandmother did not believe D.L. when [D.B.] told her what happened and "took [appellant's] side[."] [D.B.] took D.L. to the police station on September 4, 2017, where they both gave statements.

Trial court opinion, 3/11/19 at 1-3 (record citations and footnote 1 omitted; some brackets in original).

Following imposition of sentence, appellant filed a timely post-sentence motion challenging his convictions based on the weight of the evidence. The trial court denied that motion. Appellant then filed a timely notice of appeal. The trial court ordered appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) within 21 days. Following the grant of an extension of time, appellant complied with Rule 1925(b). The trial court then filed its Rule 1925(a) opinion.

Appellant raises the following issue for our review:

J. S66040/19

> Was not the verdict so contrary to the weight of the evidence as to shock one's sense of justice and should not a new trial be awarded?

Appellant's brief at 3.

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013) (citations omitted; emphasis omitted).

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the . . . verdict if it is so contrary to the evidence as to shock one's sense of justice.

***Commonwealth v. Devine***, 26 A.3d 1139, 1146 (Pa.Super. 2011).

Here, appellant complains that the verdict was against the weight of the evidence because none of the adults who lived in the home with D.L. and appellant testified; the fact that D.L.'s grandmother permitted appellant to remain in the home after she learned of appellant's acts is not "how one would react to a sexual predator"; and D.L. did not tell police that she told her friend

- 4 -

F.T. about appellant's acts. (Appellant's brief at 9-11.) In so complaining, appellant invites this court to assess witness credibility and reweigh the evidence. "The jury, as fact-finder[, however,] had the duty to determine the credibility of the testimony and evidence presented at trial." ***Commonwealth v. Talbert***, 129 A.3d 536, 546 (Pa.Super. 2016) (citation omitted). Appellate courts cannot and do not substitute their judgment for that of the fact-finder. ***See id.*** A jury of appellant's peers heard the testimony of D.L., D.B., and the police officer who took their statements. The jury weighed the evidence and assessed the credibility of those witnesses and determined that the Commonwealth's evidence proved beyond a reasonable doubt that appellant committed the crimes of solicitation to commit involuntary deviate sexual intercourse, unlawful contact with minor, corruption of minors, and indecent assault – complainant less than 16 years of age. After carefully reviewing the record, we conclude that the jury's verdict was not so contrary to the evidence so as to shock one's sense of justice. Rather, our review of the record supports our conclusion that the trial court properly exercised its discretion in denying appellant's weight of the evidence claim.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/8/20